**STATE of Iowa, Appellee,**

v.

**John D. KOOP, Appellant.**

**STATE of Iowa, Appellee,**

v.

**Jack Lyle BLANCHARD, Appellant.**

**Nos. 65936, 65212.**

Supreme Court of Iowa.

Jan. 20, 1982.

Chris Odell, State Appellate Defender, Des Moines, for appellant Koop.

Scott D. Rosenberg, Des Moines, for appellant Blanchard.

Thomas J. Miller, Atty. Gen., Thomas N. Martin and Robert P. Ewald, Asst. Attys. Gen., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

LeGRAND, Justice.

This is a consolidated appeal of two criminal cases involving the same single issue. Both defendants claim their convictions were based upon evidence obtained in an illegal search and seizure in violation of their fourth amendment constitutional rights. We affirm the trial court.

The defendant, Jack Lyle Blanchard, was convicted of first-degree robbery in violation of sections 711.1 and 711.2, The Code 1979, and of unauthorized possession of an offensive weapon in violation of sections 724.1 and 724.3, The Code 1979. He was sentenced to serve a term of not to exceed twenty-five years on the first charge and a sentence of not to exceed five years on the second. The defendant, John D. Koop, was convicted of robbery in the first degree in violation of sections 711.1 and 711.2, The Code 1979, and of the charge of carrying a dangerous weapon in violation of section 724.4, The Code 1979. He was sentenced to serve a term not to exceed twenty-five years on the first charge and a term not to exceed two years on the second.

On January 11, 1980, Craig Sonksen was working in an apartment house which he owned at 1065 22nd Street in Des Moines. There were two apartments on the second floor of the building numbered 6 and 7. Early in the evening Sonksen went out in the back yard to investigate a disturbance

caused by a barking dog. While he was there, two men, both wearing ski masks, came down the back stairs. Sonksen did not recognize them as tenants in his building. He inquired if they had heard the dog barking. They replied in the negative, then turned around and went back up the stairs.

Sonksen went back into the house and, upon reflection, became suspicious of the attire and conduct of the two persons he had seen. Although it was January, the weather was mild and there appeared to be no occasion for the wearing of ski masks to protect against weather. He called the police, and Officers Jones and Grove were dispatched to investigate. Sonksen asked the officers to look at the second floor of the building to see if anything was amiss. They observed fresh pry marks on the doors leading into apartments 6 and 7 and some wood chips on the floor nearby. They also found the door to apartment 6, although closed, was unlocked. They called into the apartment but no one answered. They then entered the apartment and made a search for any persons who might be inside. They found none. They noted that the apartment was in disarray. Officer Jones remained at the doorway of the apartment while Officer Grove went downstairs and asked Mr. Sonksen to observe the condition of the apartment to determine, if he could, whether there had been a break-in.

The apartment was leased to Larry Crooks, an over-the-road truck driver. Mr. Sonksen had not seen him for almost three weeks and assumed he was out of town because his truck was not in its accustomed place. Sonksen returned to the apartment with Officer Grove and, together with Officer Jones, they entered the apartment. While they were there, a dispatch came over the police radio reporting a robbery at a restaurant about four blocks from the apartment house. The dispatch described the robbers as "two individuals wearing ski masks." The description also included details that the suspects were carrying a handgun, a sawed-off shotgun, were of medium height, and that one was wearing a brown jacket and the other a blue jacket.

Within a very few moments, Sonksen and the two officers heard a commotion at the rear of the building as if someone was running up the back stairs. The officers turned off their police radios, advised Sonksen to be quiet, and took up positions in the bedroom area of the apartment where they could observe the back door. Two men entered, each carrying something in his arms. They were dressed in jeans, and one was carrying a blue coat and the other a brown coat. One of the men dropped the bundle he was carrying. It revealed a ski mask, a pair of brown gloves, a brown paper sack which, when it struck the floor, sounded as though it contained coins. The officers then entered the living room where they observed a sawed-off shotgun on the floor. They arrested the two men and seized a number of items which were later used as evidence against both defendants. It is the seizure of these items which is said to be a violation of defendants' fourth amendment rights. The items seized included a sawed-off shotgun, a blue coat, a brown jacket, a .380 automatic pistol, ammunition, a pair of blue gloves, a pair of brown gloves, two ski masks, a brown paper sack containing money, and a roll of electrical tape.

Each defendant filed a motion to suppress this evidence. Both were denied. Each later filed a timely objection to the admission of the damaging evidence at trial. These objections were overruled.

The State challenges the standing of defendants to raise the question because they were not Sonksen's tenants and had no right of occupancy to the apartment in which these events occurred, although there was evidence the defendants had been permitted use of the apartment by Mr. Crooks. We decide the case on the validity of the search and seizure and do not reach the standing issue.

The decisive question is whether the police officers had a right to be in the apartment and consequently to seize the incriminating evidence which defendants brought with them when returning from the restaurant robbery. Certainly the police were

there with the permission of Mr. Sonksen, who owned the building, but this is not ordinarily sufficient to invade the privacy of a tenant. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 381 (1966); *State v. Holtz*, 300 N.W.2d 888, 892 (Iowa 1981); *State v. Smith*, 178 N.W.2d 329, 332 (Iowa 1970).

■ Our review of the record bearing on this constitutional question is de novo. *State v. Holtz*, 300 N.W.2d 888, 891 (Iowa 1981). We start with the principle that warrantless searches and seizures are per se unreasonable unless they come within one of the recognized exceptions to the warrant requirement. *Id.* at 892; *State v. Folkens*, 281 N.W.2d 1, 3 (Iowa 1979). The State has the burden to show the warrantless entry in the present case was reasonable under applicable constitutional standards. *Holtz*, 300 N.W.2d at 892.

This case presents some rather bizarre circumstances. Perhaps that explains why there are so few cases like it. The tenant of the apartment had been away for approximately three weeks. He had apparently authorized at least one of the defendants, perhaps both, to occupy his apartment during his absence. Sonksen did not know of this arrangement. While this may not affect defendants' right of privacy, it has a bearing upon the reasonableness of the Sonksen's concern and the ultimate entry into the apartment.

■ Although a tenant has a right to privacy in leased premises, that right is not absolute. Under both sections 562A.19 and 562A.29, The Code 1979, a landlord has a right to enter the occupied premises under certain conditions. These code provisions cannot supersede defendants' constitutional rights under the fourth amendment; but they become part of the lease agreement and permit reasonable entry of leased premises by a landlord. 49 Am.Jur.2d *Landlord and Tenant* § 141, at 169 (1970). The landlord's entry in the present case was a reasonable one and did not violate the fourth amendment. If Sonksen's entry was proper, it follows so was that of the officers if made to carry out the landlord's purposes. We believe it was.

There was no search here in the conventional sense. The entry and subsequent examination of the apartment were not to discover evidence against defendants. On the contrary, the entry was for the tenant's protection. The fact it turned out otherwise was simply a stroke of ill-luck for defendants.

We consider the circumstances facing Sonksen and the officers at the time of the entry. Mr. Crooks was absent for a prolonged period; the landlord met two unidentified persons leaving the area of Crooks' apartment wearing ski masks; these men avoided direct confrontation with Sonksen by retracing their steps when he questioned them; and fresh pry marks and wood chips were found at the door to apartment 6. We are convinced these facts were sufficient to constitute such an emergency as to permit entry to the apartment under section 562A.19(2), The Code 1979, to determine if there had been a burglary.

We recognize the defendants argue some of these circumstances do not have the effect the State ascribes to them and actually militate against the right to enter the apartment. Decisions concerning such matters, however, must be made on the facts as they reasonably appeared at the time, not after long study and deliberation by those seeking to defeat the conclusion reached.

It would be unrealistic to say a landlord is helpless to protect the property of an absent tenant or to safeguard his own property interest under the circumstances of this case. The landlord's purpose here, at least partially, was to see if his tenant's possessory rights had been disturbed. He acted in good faith and had reasonable grounds for suspecting there had been illegal activity. We hold he was justified in entering the apartment and in enlisting the help of the police for that very limited purpose.

■ We come now to seizure of evidence by the officers. Finding, as we have, that the police were rightfully in the apartment, we find also that the incriminating evidence

was not illegally seized. It was properly taken under either of two rationales. It was in plain view after defendants burst into the apartment and virtually deposited it at the officers' feet; or after defendants had been arrested, it was properly taken incident to a legal arrest. *State v. Jackson*, 210 N.W.2d 537, 539–40 (Iowa 1973).

·It follows that we conclude the evidence was validly seized and was properly used against defendants. The two cases most closely resembling this one factually reached the same conclusion we have, although for somewhat different reasons. *See United States v. Estese*, 479 F.2d 1273, 1274 (6th Cir. 1973); *Commonwealth v. Young*, —— Mass. ——, —— – ——, 416 N.E.2d 944, 950–51 (1981).

Defendants argue that there were two entries into the apartment and that, assuming the first was valid, the second was clearly illegal. We do not deem these to have been two separate events. The entire affair was a continuous one. The slight interruption to permit Officer Grove to ask Mr. Sonksen's help did not terminate the original entry.

The judgments are affirmed.

AFFIRMED.