STATE of Iowa, Appellee,

v.

Floyd Clifford GROFF, Appellant.

STATE of Iowa, Appellee,

v.

Cindy Rae GROFF, Appellant.

No. 66397.

Supreme Court of Iowa.

Aug. 25, 1982.

Bruce Washburn, Iowa City, for appellants.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Kenneth R. Martens, Iowa County Atty., for appellee.

UHLENHOPP, Justice.

This appeal involves challenges to the validity of a search warrant.

Defendants Floyd Clifford Groff and Cindy Rae Groff are married and live on a farmstead in Iowa County, Iowa. Their home is approximately one and three-quarters miles from a field in Washington County owned by Floyd's father, Warren Groff. In 1979 Floyd planted corn in that field.

In October 1979, a local farmer visited the field and discovered what appeared to be a cultivated marijuana plot containing three to four rows of plants growing on an edge of the field between the corn and timberland. The farmer told his discovery to several persons including an informant. On the morning of October 9, 1979, the informant notified Washington County Deputy Sheriff Jack Dillon. Roger Timko, a state narcotics agent, was present at the sheriff's office when the tip was received, and assisted the sheriff's personnel in investigating the information. Dillon first checked the Washington County recorder's office and found that the field was owned by Warren Groff. Dillon and Sheriff Yale Jarvis then contacted several persons living near the field, who provided information

that Floyd had access to the field and was currently farming it. Later the same afternoon Dillon, Timko, Jarvis, and a pilot flew over the field and observed several rows of what appeared to be marijuana growing between the corn and timber. The party also flew over defendants' residence but observed no marijuana or marijuana-processing activity.

Based on the information from the interviews and flight, Agent Timko executed an affidavit for a search warrant. In the affidavit he stated that during the flight he personally observed a plot of green leafy plants in the field which appeared to be consistent in form with marijuana, that he had been informed that Floyd *owned* and had access to the field in question, and that his experience as a narcotics agent indicated an individual engaged in producing marijuana needed an area to process the plants prior to distribution and use. The affidavit was presented to a Washington County nonlawyer magistrate who, without taking oral testimony, issued a search warrant covering both the Washington County field and the Iowa County farmstead.

Officers executed the warrant on the morning of October 10, 1979. One group of officers was dispatched to the field. They seized approximately 232 six- to seven-foot marijuana plants. A second group of officers went to the farmstead and conducted a thorough search of the farmhouse and outbuildings. They confiscated marijuana in various stages of processing, and paraphernalia used in processing and smoking marijuana.

The county attorney charged defendants with manufacturing or possessing with intent to manufacture or deliver a controlled substance. §§ 204.401(1), 204.204(4)(j), The Code 1979. The cases against defendants were consolidated. Iowa R.Crim.P. 6(4)(*b*). Prior to trial defendants moved to suppress all evidence seized from their Iowa County farmstead on the ground that the search warrant was invalid as to that property. After a hearing the district court overruled the motion, and the case proceeded to trial. A jury found Floyd guilty of the lesser

included offense of possession of a controlled substance with intent to deliver not for profit, §§ 204.401(1), 204.410, and found Cindy guilty of the lesser included offense of possession of a controlled substance. § 204.401(3). The trial court sentenced them and they appealed.

On appeal defendants assert that the trial court erred in overruling their motion to suppress. They contend that the search warrant was invalid with respect to their residence for the following reasons: (1) the search warrant affidavit contained false statements which should be disregarded in determining probable cause, and in the absence of such statements no probable cause existed; (2) even if the false statements are considered the affidavit failed to show probable cause; (3) the issuance of a search warrant by a nonlawyer magistrate violated defendants' right to due process of law; and (4) a Washington County magistrate has no authority to issue a search warrant for property in Iowa County. Defendants do not challenge the warrant with regard to the Washington County field.

I. *False statements.* Defendants allege that Agent Timko made several false statements in the search warrant affidavit. They contend that those statements should have been deleted from the affidavit and the determination of probable cause made anew by the district court, citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978). In the cited decision the United States Supreme Court held that where a defendant establishes by a preponderance of the evidence an affiant made a false statement in a search warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, the Fourth Amendment requires the statement be deleted from the affidavit and the remaining contents be scrutinized to determine whether probable cause appears. If the remaining contents are insufficient to establish probable cause, the warrant is void and the evidence obtained in the search must be excluded as though probable cause was lacking on the face of the affidavit. *Id.* at 156, 98 S.Ct. at 2676,

57 L.Ed.2d at 672. Defendants argue that when Timko's alleged false statements are removed from the affidavit, the remaining allegations are insufficient to show probable cause to search their residence. They therefore conclude that the district court erred in failing to suppress the evidence obtained during the search of their residence.

Before reaching the merits of defendants' veracity claim, however, we must dispose of two preliminary matters—the standard by which such claims are to be determined under the Iowa Constitution and the proper procedure for raising a veracity challenge.

A. Defendants' veracity claim is based on both the Iowa and United States Constitutions. The standard for determining such claims under both constitutions was originally explained in Iowa in *State v. Boyd*, 224 N.W.2d 609 (Iowa 1974). Four years later, however, the United States Supreme Court confronted the veracity issue in *Franks* and announced a more rigorous requirement for defendants in challenging the truthfulness of an affidavit. The *Franks* standard, of course, controls the disposition of veracity claims under the federal constitution, *State v. Olsen*, 293 N.W.2d 216, 219 (Iowa), *cert. denied*, 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980), and the less stringent *Boyd* standard would apply to the determination of such claims under the Iowa Constitution. After inviting our attention to this conflict, the State urges us to modify our holding in *Boyd* to make it consistent with *Franks* so that veracity claims based on both constitutions may be determined by a single standard. Defendants, on the other hand, assert that we should, as is our prerogative, interpret the Iowa Constitution to provide greater protection than the United States Supreme Court has found in comparable language of the federal constitution, and retain the *Boyd* standard as a matter of Iowa law.

In *Boyd* we held a search warrant could be invalidated when a defendant proves "that an agent or representative of the state has: (1) intentionally made false or untrue statements or otherwise practiced fraud upon the magistrate; or (2) that a material statement made by such agent or representative is false, *whether intentional or not.*" 224 N.W.2d at 616 (emphasis added). In *Franks* the Supreme Court held that a defendant could challenge the veracity of an affidavit by showing that the affiant: (1) intentionally and knowingly made a false statement, or (2) made a false statement with reckless disregard for the truth. 438 U.S. at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

*Boyd* and *Franks* both permit veracity challenges to false statements that are deliberately or intentionally made by the affiant. The two standards differ, however, as to the effect of a false statement included in an affidavit as a result of a good faith or innocent mistake by the affiant. Under *Boyd* such a statement, if material to a finding of probable cause, provides a basis for the invalidation of the warrant. 224 N.W.2d at 616. Under *Franks* such a statement would not be subject to challenge, as that standard requires a minimum that the statement be made with reckless disregard for the truth. 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. *See* 2 W. LaFave, *Search and Seizure* § 4.4(b), at 61–64 (1978).

We conclude that the standard adopted in *Boyd* should be modified in light of *Franks* to provide a unified standard for testing veracity claims. Initially we note that the search and seizure clauses of the Iowa and United States Constitutions contain identical language. *Compare* U.S. Const. amend. IV, *with* Iowa Const. art. I, § 8. We have often said that where state and federal constitutional clauses contain a similar guarantee they are deemed to be identical in scope, import, and purpose. *State v. Roth*, 305 N.W.2d 501, 507 (Iowa 1981) (rule applied to search and seizure provisions of state and federal constitutions); *State v. Davis*, 304 N.W.2d 432, 434 (Iowa 1981); *Redmond v. Ray*, 268 N.W.2d 849, 852 (Iowa 1978); *In re Johnson*, 257 N.W.2d 47, 49 (Iowa 1977). Moreover, we have stated that "[w]e have an interest in harmonizing our constitutional decisions

with those of the Supreme Court when reasonably possible, even though we recognize and will jealously guard our right and duty to differ in appropriate cases." *State v. Olsen*, 293 N.W.2d 216, 219–20 (Iowa 1980). *See Davis*, 304 N.W.2d at 434 ("Special respect and deference is accorded United States Supreme Court interpretations of similar language in the federal constitution."). In recent cases we have declined to provide greater protection under the Iowa Constitution than the United States Supreme Court has found in the federal constitution. *Roth*, 305 N.W.2d at 507 (no reason to adopt stricter standard under state constitution for warrantless inventory search of automobile than United States Supreme Court has adopted under federal constitution); *Davis*, 304 N.W.2d at 434 (state constitution, like federal constitution, does not require "express waiver" of *Miranda* rights); *Olsen*, 293 N.W.2d at 219–20 (declining to apply more protective interpretation to search and seizure clause of state constitution than United States Supreme Court adopted for federal constitution).

■ A more persuasive reason for adopting the *Franks* standard is the policy underlying the exclusion of illegally obtained evidence. The exclusionary rule "is not calculated to redress the injury to the privacy of the victim of the search and seizure." *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067, 1083 (1976). Rather, its purpose is to deter constitutionally violative police conduct. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974); *State v. King*, 256 N.W.2d 1, 6 (Iowa 1977). When a police officer through negligence or innocent mistake includes a false statement in a search warrant affidavit, little deterrent function is served by invalidating the warrant and suppressing the evidence. *Theodor v. Superior Court of Orange County*, 8 Cal.3d 77, 97, 501 P.2d 234, 248–49, 104 Cal.Rptr. 226, 240–41 (1972). *See* 2 LaFave, *supra* § 4.4(b), at 62–64. The *Boyd* standard is thus inconsistent with the purpose of the exclusionary rule to the extent that it requires invalidation of a warrant because of a material misstatement made as a result of an affiant's negligence or innocent mistake. We believe the *Franks* standard more properly promotes the deterrence function of the rule by permitting veracity challenges only to those false statements that were tendered in bad faith by the affiant. We therefore hold that veracity claims under the Iowa Constitution are to be determined by the standard in *Franks*.

B. As a second preliminary matter, the State contends that defendants failed to follow proper procedure for challenging the veracity of statements. Specifically, it asserts that defendants failed to make a preliminary showing which impugned the integrity of the warrant. According to the State's theory, defendants are not entitled to an evidentiary hearing on the merits of their claim until they have made such a showing.

The method for raising veracity claims was explained in *Boyd*, 224 N.W.2d at 616. We held that a defendant is entitled to inquire into the truth of an affidavit during an evidentiary hearing only after he has made a preliminary showing under oath that the affiant included false statements in the affidavit. *See State v. Post*, 286 N.W.2d 195, 201–02 (Iowa 1979) (holding that a prima facie showing of an intentional falsehood in a search warrant affidavit entitles the defendant to an evidentiary hearing on the veracity issue).

The United States Supreme Court adopted a similar procedure when it confronted the veracity question in *Franks*:

> [W]e hold that, where the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155–56, 98 S.Ct. at 2676, 57 L.Ed.2d at 672 (emphasis added). Later in the opinion the Court expanded upon the nature of the required preliminary showing:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. *To mandate an evidentiary hearing the challenger's [preliminary showing] must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171–72, 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682 (emphasis added, footnote omitted). *See also Model Code of Pre-Arraignment Procedure* § SS 290.3(1) (1975) (requiring preliminary showing, supported by affidavit, setting forth substantial basis for questioning veracity of affiant as prerequisite for hearing).

 In the present case defendants made no preliminary showing regarding the integrity of the affidavit. They raised the veracity issue in conclusory terms as part of their motion to suppress. No specific allegations were given in support of their claim until after the suppression hearing in a brief.

The problem, however, with the State's present contention that the procedure was inadequate is that the State failed to object in the district court. The district court, although mentioning the defect in procedure, disposed of the veracity issue in its ruling on the motion to suppress. We will therefore consider the merits of defendant's veracity claim on this appeal.

C. Coming to the merits of defendants' veracity claim, our review of the record is de novo. *State v. Koop*, 314 N.W.2d 384, 387 (Iowa 1982); *State v. Harlan*, 301 N.W.2d 717, 718 (Iowa 1981).

Defendants allege that Agent Timko included three false statements in the search warrant affidavit:

(1) that defendants "own and have access to" the marijuana field (said to be false because defendants do not "own" the field);

(2) that "said property described contains marijuana" (said to be false because "property" referred to both the field and defendants' residence and no marijuana had been observed at the residence);

(3) that the green plants observed through aerial surveillance of the field "were not consistent with any form of legal plant or crop" (said to be false because Timko later testified that legal plants might exist which looked the same).

1. Regarding the first statement, Timko swore in the affidavit that three local farmers had informed members of the sheriff's staff during telephone interviews that Floyd owned the Washington County field. Timko also stated in supplemental information to the affidavit, "It should be noted that the [Iowa County] house and outbuildings listed in the warrant application are owned by the same individual who owns the suspect land. This subject being Floyd Groff." Defendants allege that Timko's statements of ownership were false because Floyd farmed the field but did not own it. They further allege that those statements were made, at a minimum, with reckless disregard for the truth. They support their

allegation of bad faith by contending that Timko knew the identity of the actual owner of the field before executing the affidavit and, additionally, that none of the local farmers told officers that Floyd owned the field.

■ Our review of the suppression hearing record discloses that the field was owned by Warren Groff in October 1979, and that Floyd had access to and was farming it during that period. Given these facts we conclude that the statements of ownership are not "false" for purposes of determining probable cause. The purpose of the search warrant affidavit is to provide a neutral and detached magistrate with objective facts upon which he can make an independent determination of probable cause. A "false" affidavit statement is one which misleads the magistrate into believing the existence of certain facts which enter into his thought process in evaluating probable cause.

■ In the present case a critical factor in the assessment of probable cause was defendants' relationship to the Washington County field. Defendants' argument necessarily implies that Timko's use of the term "owns" created a stronger nexus between them and the field than if he had used the term "farms". The issue of whether Timko's statements were "false" within the meaning of *Franks* thus turns on the question of whether the substitution in terms misled the issuing magistrate into believing that defendants were more likely to be involved with the marijuana crop than was otherwise true. In our opinion use of the term "owns" rather than "farms" did not have the potential for misleading the magistrate in that manner. In fact, use of the term "farms" would have created a greater nexus, as that term necessarily contemplates continuous activity in the field whereas the term "owns" does not. The critical fact for the magistrate in determining probable cause was the identity of the person using the field on the day-to-day basis. Although the terms "own" and "farm" are technically different, we think any distinction in the present setting is

negligible. We therefore conclude that Timko's statement regarding ownership of the field was not "false" within the meaning of *Franks*.

Even assuming that the statement was "false", our review of the record leads us to believe, as did the district court, that the substitution in terms was accidental rather than intentional. Although evidence appears to suggest that Timko was negligent in failing to clarify the fact of ownership before executing the affidavit, allegations of negligence or innocent mistake are insufficient under *Franks* to constitute a basis for challenging the veracity of an affidavit. 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

■ 2. Defendants also challenge the veracity of the statement that "said property contains marijuana", on the ground that it refers to their Iowa County residence as well as the Washington County field when in fact no marijuana had been observed at their residence. The State argues that the statement was not false or misleading when the affidavit is read as a whole. Our review of the record convinces us that the State is correct.

The statement at issue appeared in the following paragraph:

> That said property described contains marijuana, a schedule I controlled substance in various stages of growth. *That said portion of land is bordered by trees and a cornfield and the area containing the suspected marijuana appears to be approximately 100 yards long by 20 yards wide.*

(Emphasis added.) Reading the full paragraph makes apparent that the property claimed to contain marijuana was the Washington County field and not the Iowa County farmstead. Moreover, throughout the affidavit Timko referred to the property on which the marijuana was growing as follows: "Floyd Groff is the owner and has access to the *suspected property* where the suspected marijuana is being grown," or, "Floyd Groff owns and has access to the *suspected area* containing the suspected

marijuana." (Emphasis added.) That the "suspected area" or "suspected property" referred to as containing the marijuana is the Washington County field and not defendants' residence is made plain by Timko's later statement that distinguishes those two locations: "It should be noted that the house and outbuildings listed in the warrant application are owned by the same individual who owns the *suspect land*." (Emphasis added.) We therefore find that the statement was not misleading when considered in the context of the affidavit as a whole.

■ 3. Last, defendants challenge the veracity of Timko's statement that the plants observed during the flight over the field "were not consistent with any legal form of plant or crop." Defendants contend the statement was false in light of Timko's testimony at the suppression hearing that legal plants might exist which looked similar. Our review of the record discloses that the challenged statement was Timko's opinion of what he had observed, based on his training as a drug enforcement officer. He testified as follows concerning the statement:

Q. Okay. Now on that supplemental information, it states that the plants appeared to be a green leafy substance consistent with the cannabis sativa plant and that said plants were not consistent with any legal plant or crop. Was that your statement at that time? A. Correct.

Q. Now, how well could you see these plants through your binoculars? A. Well, obviously well enough to state what I have stated here that they resembled plants which appeared to be consistent with what I had known to be marijuana, and there was several other factors involved as well.

Q. Well, were there other factors in identifying the plants from observation; is that what you said? There were other factors involved as well as—I guess what I'm asking from your own personal observations, you know, how well you could identify the plants from that distance? A. There would be one factor involved with the visual identification.

Q. Okay. Now, I think you also said in your application that you've had training in drug identification; is that correct? A. Yes.

Q. And approximately how much time have you spent being trained in identifying marijuana visually? A. I don't know about the training time involved. I've been to schools where marijuana has been identified and tested and given the history and background on it at several law enforcement schools.

Q. Aren't there a number of other plants that resemble marijuana from even fairly close up? A. Yeah, there are other forms of cannabis that have jagged edges or are similar in chemical background too as well I believe.

Q. I just want to talk about visually right now. From an airplane at 1,000 feet even with binoculars, aren't there several other plants that resemble marijuana at that distance? A. I believe there are, yes.

Q. . Okay. So here where you say that the plants were not consistent with any form of legal plant or crop, is that—that's not exactly accurate; is it? A. Well, the plants that I'm familiar that it resembled are all offshoots of cannabis which have controlled substance backgrounds in them. I believe cannabis sativa and I think there are a few others which are controlled as well.

Q. Aren't there a lot of weeds that look like marijuana, horseweed? A. There could be. I'm not familiar with it if there are.

Even assuming that the statement containing Timko's opinion is the type of statement that can be challenged as false under *Franks*, we are unable to conclude that it was an intentional misrepresentation of fact or made with reckless disregard for the truth. The statement is immune from attack under *Franks*.

Defendants have failed to sustain their burden of proof under *Franks*. Hence no necessity exists to determine probable cause anew in the absence of the challenged statements.

II. *Probable cause.* Defendants contend that even with the inclusion of the challenged statements, Timko's affidavit is insufficient to show probable cause to search their Iowa County residence. They argue that the facts recited in the affidavit were insufficient to establish a nexus between the marijuana growing in the Washington County field and their residence.

■ Probable cause to issue a search warrant exists "when the facts and circumstances presented to the judicial officer are sufficient in themselves to justify the belief of a reasonably cautious person that an offense has been or is being committed." *State v. Leto,* 305 N.W.2d 482, 485 (Iowa 1981); *State v. Post,* 286 N.W.2d 195, 199 (Iowa 1979); *State v. McManus,* 243 N.W.2d 575, 579 (Iowa 1976). The affidavit disclosed that the field contained a large quantity (100 yards by 20 yards) of marijuana plants in various stages of growth. The affidavit further stated:

> That Agent Timko in his experience as a narcotics investigator it is known [sic] that an individual who manufactures or distributes marihuana, particularly marihuana needs an area to refine, manicure and store said substances during various stages of drying prior to use and distribution.

We think the magistrate could reasonably infer that defendants' residence was the likely location for processing the marijuana. The quantity of marijuana observed indicated a large-scale growing operation. The operation required a location where the plants could be processed before distribution and use. That location needed to be a place where the plants could be concealed from public view and large enough to accomodate a sizeable crop. It also needed to be a place in proximity to the field, considering the quantity of plants to be transported. Defendants' residence satisfied these necessities; it was near the field and, as described in the affidavit, it had several barns and sheds for storing the plants during various stages of processing. The magnitude of production also made probable that defendants kept written documents pertaining to the operation; again, their residence would be the likely location of those items.

■ Although a nexus must be established between the items to be seized and the place to be searched, direct observation is not required. *State v. District Court for Johnson County,* 247 N.W.2d 241, 249 (Iowa 1976). That nexus can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items. *Leto,* 305 N.W.2d at 486 (reasonable to infer that suspect in automobile theft ring would keep stolen automobiles at auto body repair shop located at his residence). *See District Court for Johnson County,* 247 N.W.2d at 248 (reasonable to infer that remainder of stolen property would be found in the defendant's residence following his arrest on highway in truck containing some but not all of property stolen in recent burglaries); *State v. Wright,* 244 N.W.2d 319, 321 (Iowa 1976); *United States v. Spearman,* 532 F.2d 132, 133 (9th Cir. 1976).

We conclude that the magistrate could reasonably infer from the facts recited in the affidavit that defendants' residence was likely to be the location of marijuana for personal use, marijuana in various stages of processing before distribution, and records and equipment used in production. Defendants' contention as to probable cause is therefore without merit.

■ III. *Issuance of search warrant by nonlawyer magistrate.* The search warrant in the present case was issued by Jane Shepard, a nonlawyer magistrate for Washington County. Defendants contend that the issuance of a warrant for their residence by a nonlawyer magistrate deprived them of their constitutional right to due process. The United States Supreme Court confronted that issue in *Shadwick v. City of Tampa,* 407 U.S. 345, 349, 92 S.Ct. 2119, 2122, 32 L.Ed.2d 783, 788 (1972). The Court there held no constitutional requirement exists that "all warrant authority must reside exclusively in a lawyer or judge." The

court further held the Fourth Amendment is satisfied when the issuing magistrate meets two tests: "He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Id.* at 350, 92 S.Ct. at 2123, 32 L.Ed.2d at 788.

Defendants do not challenge the impartiality or detachment of Magistrate Shepard. They do, however, question whether she was adequately trained to determine probable cause. Our review of the record indicates that she has served as a magistrate for over three years and that twice a year she attends conferences at which magistrate's training is given. She stated that of the seven conferences she had attended three included specific instruction on the issuance of search warrants. Defendants have failed to make any specific showing that the Magistrate was incompetent to issue the warrant in question. In the absence of such showing we presume from the record that she was capable of determining whether probable cause existed to search the Groff residence. Defendants' due process contention is without merit.

■ IV. *Issuance of warrant for property in Iowa County by Washington County magistrate.* Finally, defendants challenge the warrant on the ground that a magistrate for Washington County has no authority to issue a warrant for the search of property located in Iowa County. They argue that a magistrate is limited to acting "within the district" of his appointment, under section 602.60, The Code 1979.

Section 602.62 provides that the procedure to be followed by magistrates in issuing search warrants is set forth in chapter 808 of the Code. Under section 808.3, any person may make an application for the issuance of a search warrant "before any magistrate." Section 808.4 governs the issuance of search warrants and provides:

Upon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue a warrant, signed by the magistrate with his or her name of office, directed to any peace officer, commanding that peace officer forthwith to search the named person, place, or thing *within the state* for the property specified, and to bring any property seized before the magistrate.

(Emphasis added.) Under that section a magistrate may direct a peace officer to search a person, place, or thing "within the state" for the specified property.

Prior to the revision of the criminal code, the issuance of search warrants was governed by section 751.5, The Code 1977. That section provided:

If the magistrate is satisfied from his examination of the applicant, and of other witnesses, if any, and of the allegations of the information, of the existence of the grounds of the application, or that there is probable cause to believe their existence, he shall issue a search warrant, signed by him with his name of office, directed to any peace officer *in the county*, commanding him forthwith to search the person or place named for the property specified, and bring said property before him.

(Emphasis added.) According to Professors Yeager and Carlson, "The drafting subcommittee voted to delete 'in the county' from former § 751.5, to avoid any county-boundary limitation to searches." J. Yeager and R. Carlson, *Iowa Practice* § 893 (1979).

The deletion of the words "in the county" from former section 751.5 and the inclusion of the words "within the state" in present section 808.4 lead us to believe that the legislature intended magistrates to have the authority to issue search warrants for property located outside the county of their appointment. Section 602.60 does not alter our conclusion. That section merely limits the magistrate to exercising his power from within his appointed district. Magistrate Shepard had authority to issue the warrant for defendants' Iowa County residence.

Defendants' assignments of error do not have merit.

AFFIRMED.

All Justices concur except LeGRAND and McCORMICK, JJ., who concur specially.

CARTER, J., takes no part.

LeGRAND, Justice (concurring specially).

I agree with the result reached by the majority but disagree with Division I of the opinion. I therefore concur only in the result.

In *State v. Boyd*, 224 N.W.2d 609 (Iowa 1974), this court adopted a rule for testing the validity of search warrants issued on the strength of sworn testimony by law officers. We there held that *any* false statement would invalidate the warrant if made intentionally or with reckless disregard of the truth and that a *material* false statement would likewise invalidate the warrant regardless of good faith.

Now the majority abandons *Boyd* in favor of *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), which makes deliberate misrepresentation a prerequisite for invalidating such a warrant.

In adopting *Franks*, the majority says the purpose of search warrant rules is to prevent official misconduct; but this is only one of the purposes. It is not even the prime purpose.

The principal purpose of our search warrant rules is *not* to deter official misconduct, but to insure that warrants issue only on a showing of probable cause. The majority opinion permits the issuance of search warrants on material facts demonstrably false if innocently made. I doubt this will make the wrongful invasion of a suspect's rights more palatable. If the material facts upon which the warrant issued are false, the warrant was improvidently granted and should be quashed. Under those circumstances, we should never reach the question of official misconduct. This was the basis upon which *Boyd* was decided. I think we should adhere to our own rule. We may do this because *Boyd*, in applying Iowa constitutional standards, enlarges, rather than diminishes, the protection afforded by *Franks*.

McCORMICK, J., concurs in this special concurrence.