STATE of Iowa, Plaintiff-Appellee,

v.

Khamfeuang THONGVANH,
Defendant-Appellant.

No. 84–1736.

Court of Appeals of Iowa.

Oct. 22, 1986.

William L. Habhab, and Allan L. Goode, of Price, Goode, Breen & Breen, Ft. Dodge, for defendant-appellant.

Thomas J. Miller, Atty. Gen., James W. Ramey, Asst. Atty. Gen., and Stephen E. Barbour, Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, C.J., and SNELL and HAYDEN, JJ., but considered en banc.

HAYDEN, Judge.

Defendant appeals from his conviction for first-degree murder. Defendant asserts that: 1) all, rather than a portion, of a statement was obtained in violation of his sixth amendment rights and should have been suppressed in its entirety; 2) probable cause was not shown sufficient to justify the issuance of a warrant for the search of defendant's residence; 3) property seized during the search should have been suppressed; 4) testimony was improperly allowed concerning matters contained in the suppressed portion of the statement; 5) trial court improperly restricted cross-examination of a witness; 6) prosecution failed to produce certain exculpatory evidence; 7) hearsay evidence was improperly admitted; and 8) the jury should have been instructed on voluntary manslaughter as a lesser included offense. The State asserts inter alia that: 1) objection to the allegedly suppressed testimony of defendant was untimely and therefore any error was not preserved; 2) the alleged exculpatory evidence was either disclosed or known to defendant; and 3) the evidence alleged to be hearsay either was not or was within the present sense impression exception, and substantially similar evidence had been presented without objection in a manner rendering any error non-prejudicial.

The victim, a Laotian refugee, was found strangled in her Fort Dodge home. Several valuable items had been taken. Defendant, a Laotian refugee, was questioned by D.C.I. investigators in Storm Lake. Prior to the interview defendant was advised of his *Miranda* rights and read the waiver form, in both English and Laotian. Defendant signed the waiver.

Approximately forty minutes into the interview Agent Blessman, a non-interviewing agent, was informed that defendant's fingerprints had been identified on a board found at the crime scene, which may have been used to bludgeon the victim. Agent Blessman then called the Assistant Webster County Attorney to advise him of this development and discuss the appropriation of an arrest warrant. After this phone call, the interviewing Agent Basler, while taking a break, was informed that an arrest warrant was being sought. The trial court suppressed the portion of defendant's statement made after the break.

Following the arrest a warrant was issued for a search of defendant's residence. An unsuccessful motion to suppress the fruits of the search was filed by defendant, asserting that in several particulars the supporting affidavit was insufficient to establish probable cause. At the time the warrant was issued, investigating officers were aware that a person wearing a brown leather coat had been seen at the victim's home and that the defendant wore that type of coat. No such coat was listed in the search warrant, but such a coat was seized when found in a closet. When tested a small stain of blood of the victim's type was found.

At trial D.C.I. Agent Basler testified concerning matters which were alleged to have been contained in the suppressed portion of defendant's statement. Defense counsel objected to this testimony and moved for mistrial. The challenge was made after the State had rested its case and was overruled. Defendant sought to cross-examine the same witness about other statements made by defendant in an attempt to show that defendant was easily confused about dates. The trial court, upon objection by State, limited cross-examination to evidence presented through direct examination of this witness.

During trial, over hearsay objection, two daughters of the victim testified concerning statements the victim had made con-

cerning previous visits by defendant to her home. A third daughter had earlier given similar testimony on direct, cross and redirect without objection.

The trial court refused defendant's request that the jury be instructed on voluntary manslaughter as a lesser included offense.

When the issues on appeal involve a constitutional right we review the evidence de novo in view of the totality of the circumstances. *State v. Aldape*, 307 N.W.2d 32, 36 (Iowa 1981); *State v. Fisher*, 279 N.W.2d 265, 268 (Iowa 1979).

**I**

■ The defendant contends that the statement made to the interviewing D.C.I. agent Basler should either have been suppressed in its entirety or suppressed from the point where the decision was made to arrest the defendant, prior to the break.

"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his Defense." United States Constitution amendment VI.

The United States Supreme Court recently set forth the "core purpose" of the sixth amendment counsel guarantee as to assure assistance at trial when the defendant is confronted with the intricacies of the law and the advocacy of the government prosecutor. *United States v. Gouveia*, 467 U.S. 180, 188–189, 104 S.Ct. 2292, 2297–99, 81 L.Ed.2d 146, 153–56 (1984) (quoting *United States v. Ash*, 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619, 627 (1973)) and *see State v. Jackson*, 380 N.W.2d 420, 423 (Iowa 1986).

A defendant's sixth and fourteenth amendment right to counsel attaches when "adversary criminal proceedings" are initiated, "whether by way of formal charge, arraignment, preliminary hearing, information or indictment." *Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411, 417 (1972); *State v. Jackson*, 380 N.W.2d 420, 423 (Iowa 1986); *State v. Johnson*, 318 N.W.2d 417, 432 (Iowa), *cert.*

*denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

In both *Johnson* and *Jackson* the defendants had been arrested and were in custody when interviewed. The United States Supreme Court has recognized the right to counsel in certain "critical" pretrial proceedings, *United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967), but the accused must still be confronted by an expert adversary or the procedural system or both. *Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298, 81 L.Ed.2d at 155, and *Jackson*, 380 N.W.2d at 423.

The method for commencing a criminal proceeding in Iowa is to file a complaint before a magistrate. Iowa Code § 804.1 (1985). The court in *Johnson* concluded that the filing of a complaint and the issuance of a warrant will create a formal charge against a defendant, when the circumstances show a commitment to prosecute. *See Jackson*, 380 N.W.2d at 423. *See also State v. Nelsen*, 390 N.W.2d 589 (Iowa 1986).

In the present case the complaint that was filed was signed by the magistrate shortly before 4:22 p.m. All information collected after the 3:46 p.m. break was suppressed by the trial court. The defendant was not confronted with the advocacy of the governmental prosecutor prior to the break, there was no commitment to prosecute. We conclude that defendant's sixth amendment rights were not violated.

■ We note that the information regarding defendant's whereabouts on the morning of the murder was discussed in the interview after Blessman had called Barbour. At trial Basler testified that defendant had told him that he had spent a number of hours at his brother's house visiting with his sister-in-law on the day of the murder. Defendant contends that this information should have been suppressed and was harmful in that it led the prosecution to claim that defendant had given an untrue alibi. No evidence relating to an alibi defense was presented at trial and the mandatory written notice was never filed. Iowa R.Crim.P. 10(11). Defendant's agru-

ment is without merit. Error, if any, was harmless.

## II

Defendant contends that the court erred in failing to suppress those items seized from his home and car, as the search warrants were issued without probable cause.

It is well-established that we may consider only the information contained in the search warrant affidavit in deciding whether probable cause was shown sufficient to justify the issuance of a warrant. *State v. Seager*, 341 N.W.2d 420, 426 (Iowa 1983); *State v. McManus*, 243 N.W.2d 575, 577 (Iowa 1976). Defendant alleges that the affidavit was defective in that: certain descriptions were incorrect; bare conclusions were alleged; and false or intentionally false statements were used.

■ Defendant's initial allegations are without merit. The incorrect descriptions are those given by various witnesses, but included within the affidavit was a correct description of these objects. Any discrepancy was made apparent to the magistrate. We find no "bare" conclusions to exist in the affidavit.

■ A "false" affidavit statement has been defined as "one which misleads the magistrate into believing the existence of certain facts which enter into his thought process in evaluating probable cause." *State v. Groff*, 323 N.W.2d 204, 210 (Iowa 1982). The Iowa Supreme Court has adopted, in *Groff*, the standard set forth by the United States Supreme Court regarding false statements made in search warrant affidavits. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978); *Groff*, 323 N.W.2d at 207. In *Franks*, the Supreme Court held that the defendant must show that the affiant either intentionally and knowingly made a false statement, or made a false statement with reckless disregard for the truth. 438 U.S. at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

Defendant has failed to show that the affidavit either intentionally and knowingly made a false statement, or made a false statement with reckless disregard.

■ Furthermore, we conclude that a reasonably prudent person upon reading the search warrant affidavit would believe that an offense had been committed and the evidence was being concealed in either defendant's automobile or residence. *Seager*, 341 N.W.2d at 427. Therefore, the trial court committed no error in not suppressing those items seized from defendant's home and/or car.

## III

Having decided that sufficient probable cause existed for the issuance of the search warrant, we next consider defendant's contention that the brown leather coat which was seized pursuant to the search was not specifically listed on the warrant and therefore should have been suppressed. Prior to trial, defendant filed a motion to suppress evidence, which the trial court overruled.

The fourth amendment requires that items seized pursuant to a search warrant be specifically described. *State v. Bakker*, 262 N.W.2d 538, 545 (Iowa 1978); *State v. Hall*, 235 N.W.2d 702, 717 (Iowa 1975) *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). This requirement furthers the goal of privacy by ensuring that even searches made with a warrant should be as limited as possible. *United States v. Clark*, 531 F.2d 928, 931 (8th Cir.1976), (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971)). A recognized exception to the requirement that items be specifically described in the warrant is the plain view doctrine. The State has the burden to prove its application. *Coolidge*, 403 U.S. at 454–55, 91 S.Ct. at 2032, 29 L.Ed.2d at 576.

■ To qualify for this exception the State must show: 1) justification for the intrusion into the otherwise protected area; 2) inadvertent discovery of the object; and 3) that the incriminating nature of the object was immediately apparent. *State v.*

*Oliver,* 341 N.W.2d 744, 746 (Iowa 1983) (*citing Coolidge,* 403 U.S. at 468–471, 91 S.Ct. at 2039–41, 29 L.Ed.2d at 584–86.)

As already concluded the search warrant in this case was sufficiently supported by probable cause. The intrusion into defendant's house was lawful. The agents were acting pursuant to a legitimate search warrant.

■■■■ The second qualification requires a showing of inadvertence. An agent may not know in advance the location of certain evidence and intend to seize it using the plain view doctrine as a pretext. *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510 (1983) (plurality opinion). No basis exists for concluding that the brown leather coat was intentionally omitted from the search warrant, that the agents knew the location of the coat in advance, and that the plain view doctrine was used merely as a pretext. As stated by Agent Blessman, the failure to include the brown leather coat on the search warrant was an oversight.

Finally, we must consider whether the incriminating nature of the coat was immediately apparent. The testimony given that a man fitting defendant's description wearing a brown leather coat had been seen at the victim's residence creates a sufficient nexus between the coat and the alleged crime. Similarly, there was sufficient knowledge for the agents to reasonably believe that the coat was evidence in the crime. *See Brown,* 460 U.S. at 742, 103 S.Ct. at 1542, 75 L.Ed.2d at 513, and *Oliver,* 341 N.W.2d at 746.

### IV

Another error alleged by defendant is that testimony concerning the suppressed portion of the defendant's statement to D.C.I. Agent Basler was improperly allowed into evidence. The State asserts that any objection was untimely and, therefore, the error was not preserved.

■■■■ The objection to the alleged error was not raised until the close of State's evidence, at which time, based on the al-

leged error, defendant's counsel made a motion for mistrial. To properly preserve error in the trial court as to the introduction of evidence, objections must be timely filed. *State v. Washington,* 356 N.W.2d 192, 194 (Iowa 1984); *State v. Reese,* 259 N.W.2d 771, 775 (Iowa 1977). For an objection to be timely it must ordinarily be made at the earliest opportunity, once the basis of the objection becomes apparent. *State v. Binkley,* 201 N.W.2d 917, 919 (Iowa 1972).

We conclude that the basis of defendant's objection was apparent at the time the statement was made. The alleged error was not preserved and therefore shall not be considered by this court.

### V

The trial court's failure to allow defendant to cross-examine a D.C.I. agent regarding statements made by the defendant, is alleged by defendant to be an error.

Initially, it must be recognized that the scope of cross-examination lies within the sound discretion of the trial court. *State v. Eye,* 274 N.W.2d 350, 357 (Iowa 1979).

The State objected to defendant's question on cross-examination of Agent Basler as to whether the defendant had told him that he had been in the victim's home prior to the day of the murder. The objection was founded on hearsay. The trial court ruled the defendant was limited in his cross-examination to materials presented on direct examination.

■■■■ The general rule is that the scope of cross-examination is limited to matters inquired into on direct examination or matters relating to the witness's credibility, bias, ill will, hostility or interest in the case. *State v. Cuevas,* 288 N.W.2d 525, 530 (Iowa 1980). We are concerned only with the scope of direct examination. The State's direct examination of Agent Basler was limited to where defendant was on the day of the murder and the agent's search of defendant's residence. Defendant's attempt to inquire into whether Agent Basler had been told by defendant that he had

been to the victim's residence prior to the day of the murder was beyond matters inquired into on direct, therefore, the trial court did not abuse its discretion in limiting cross-examination.

■■■ Defendant further contends that the court abused its discretion by sustaining the objection since it was not properly offered.

Iowa has adopted the general rule that "courts have a considerable latitude in excluding offered evidence that is objectionable, even in the absence of any objection or if there is a proper ground which is not stated." *State v. York*, 211 N.W.2d 314, 318 (Iowa 1973); *Bash v. Hade*, 245 Iowa 332, 341–42, 62 N.W.2d 180, 186 (1954). *See also State v. Beeman*, 315 N.W.2d 770, 773 (Iowa 1982). In this case the court was well within its authority in correcting the basis of the objection relating to cross-examination.

Finally, we note that any defect that may have been created by the court's action could have been cured by the defense when, at the end of the trial, they called Agent Basler as their own witness.

### VI

Defendant also argues that reversible error was committed when the State failed to disclose exculpatory evidence in its possession. Prior to trial, in a motion to produce, defendant requested materials relating to: certain witnesses; any vehicles located at or near the victim's residence prior to noon on the day of the murder; and any exculpatory evidence. The court granted said motion. Defendant then filed a motion for sanctions, the court ordered in camera inspection to determine if any exculpatory evidence existed in the State's investigative file. Immediately prior to trial defendant filed a motion to dismiss based upon the State's failure to produce the alleged exculpatory evidence. The court overruled the motion, stating that it would examine the file during voir dire. At a posttrial hearing for new trial the court admitted that it "did not have opportunity to perform a real honest-to-goodness in camera inspection."

The United States Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963).

Regarding the situation where the defense makes a pretrial request for specific material which is not disclosed, the Supreme Court stated that the conviction will be set aside if the defense can show the materiality of the evidence. *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2348, 49 L.Ed.2d 342, 350 (1976).

■■■ The defense must show that (1) the evidence requested was suppressed, (2) the evidence was favorable to the defendant, and (3) the evidence was material. *Moore v. Illinois* 408 U.S. 786, 794, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972). *See also Lindhorst v. United States*, 658 F.2d 598, 605 (8th Cir.1981). Materiality exists where it appears that the suppressed evidence might have affected the outcome of the trial. *State v. Hall*, 249 N.W.2d 843, 847, *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). *See State v. Love*, 302 N.W.2d 115, 123 (Iowa 1981).

■■■ The defense did request, on several occasions, the material involved in this appeal. We consider the prosecution's lack of cooperation reprehensible. Also, the trial court showed a lack of diligence in its actions. Our concern here is not with any possible prosecutorial misconduct, rather we focus on the harm committed to defendant due to the suppression of this evidence.

Defendant was required to show that the suppressed evidence was favorable to his case and that said evidence was material. On appeal defendant failed in his burden. He showed neither the favorability nor the materiality of the suppressed evidence.

### VII

We next consider defendant's contention that various hearsay statements were im-

properly admitted and therefore require a new trial.

■ The victim's daughter, Kham Cam, testified that her mother had told her that defendant had stopped by her house the week prior to the murder. This testimony was brought out through extensive direct and cross-examination. During this examination no hearsay objection was made.

The State then called Khamphoui Yiep, another daughter of the victim. She testified that defendant had visited her mother's home several times the week prior to the murder. This information was brought out over defendant's objection. In response to State's question as to why the defendant visited the victim's home, Mrs. Yiep stated that at the second visit defendant said that he had been laid off and asked for money.

Finally, the State called the third daughter, Khampai Baccan. She again testified that her mother had told her that defendant had stopped at her home. This evidence was received over defense counsel's objection.

Hearsay is defined as "a statement, other than one made by the defendant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa Rules of Evidence No. 801(c).

The statements that defendant objected to were not offered to prove that defendant was laid off and in need of money. The evidence was part of the State's case that showed the recent rekindling of a relationship between the defendant and the victim. It was not offered to prove the truth of anything the victim might have said. The statements were not hearsay. *See State v. Frazer*, 267 N.W.2d 34, 37 (Iowa 1978).

■ Parenthetically, we note that even if these statements could be construed as hearsay, they were correctly allowed. The Iowa Supreme Court has held that prejudice will not be found where substantially the same evidence is in the record without objection. *State v. Johnson*, 272 N.W.2d 480, 482 (Iowa 1978). The testimony of Kham Cam was "substantially the same" as that of her sisters. Therefore, any admission of hearsay in this situation was not prejudicial.

## VIII

Defendant contends that the court committed reversible error when it failed to instruct on the charge of involuntary manslaughter as a lesser included offense of first degree murder. We find no merit in this argument.

■ A lesser included offense is appropriate when the elements of the lesser offense are an elementary part of the greater offense and there is a factual basis for the instruction in the record. *State v. Millspaugh*, 257 N.W.2d 513, 516 (Iowa 1977) (quoting *State v. Rosewall*, 239 N.W.2d 171, 174 (Iowa 1976)). Voluntary manslaughter is a legally included offense of first or second degree murder. Iowa Code § 707.4 (1985).

■ A prerequisite for defendant to have been convicted of voluntary manslaughter was that he acted "solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person...." Iowa Code § 707.4 (1985), and *see State v. Ware*, 338 N.W.2d 707, 714–15 (Iowa 1983). There is no evidence of such passion in this case. Voluntary manslaughter was not a factually supported lesser included offense.

Upon careful review we find no errors. We affirm.

AFFIRMED.

All Judges concur except SNELL and SCHLEGEL, JJ., who dissent.

SNELL, Judge (dissenting).

As I believe the district court wrongly allowed the use of evidence obtained in violation of the defendant's constitutional rights, I respectfully dissent.

The majority points out both that the fourth amendment to the United States

Constitution requires that search warrants particularly describe objects to be seized, *United States v. Clark*, 531 F.2d 928, 931 (8th Cir.1976); *State v. Bakker*, 262 N.W.2d 538, 545 (Iowa 1978), and that the plain view doctrine is an exception to this requirement, *State v. Oliver*, 341 N.W.2d 744, 745 (Iowa 1983). I cannot agree, however, with the majority's application of that doctrine to the facts of the present case.

After listing the elements the State must show in order for the plain view doctrine to apply, *see Oliver*, 341 N.W.2d at 746, the majority discusses the record evidence in support of each of these elements. The second element required for an application of the plain view doctrine is that the discovery of the evidence be inadvertent. *Id.* The majority's complete analysis of that element is as follows:

> An agent may not know in advance the location of certain evidence and intend to seize it using the plain view doctrine as a pretext. (citation omitted) No basis exists for conclusion that the brown leather coat was intentionally omitted from the search warrant, that the agents knew the location of the coat in advance, and that the plain view doctrine was used merely as a pretext. As stated by Agent Blessman, the failure to include the brown leather coat on the search warrant was a oversight.

I fail to see how this analysis adequately addresses the issue of inadvertence. No one argues on this appeal that the search involved here was a pretext search. The contention urged upon us is that the search exceeded the scope of the warrant and was therefore exploratory in violation of the defendant's fourth amendment rights. I believe that a correct analysis of the defendant's allegations and the State's plain view defense on this issue leads us to agree with the defendant.

The State argues in its brief that the "discovery was inadvertent, as that term is used by the courts, because the agents did not know for certain that the coat would be located in the house before searching." The non-sequitur in the State's argument

should be obvious to this court. It does not follow from the agents' uncertainty, even assuming that to be true, that the jacket's discovery was inadvertent. I note initially that the State's premise is apparently belied by the State's contention that the jacket was "inadvertently omitted from the application and the warrant." This concession by the State also negates the majority's statement that "no basis exists for the conclusion that ... the agents knew the location of the coat in advance...." In any event, the correct inquiry under the fourth amendment is whether the agents were looking for the jacket. If they were, the constitution requires that it be listed on the warrant.

Agent John Blessman, responsible for the application for and affidavit in support of the search warrant and one of the agents who conducted the search, conceded in his deposition testimony that "everyone was aware [prior to the search] that a brown leather coat was involved." Blessman went on to admit that the seized jacket was an object of the search. In *State v. Sheppard*, 325 N.W.2d 911, 915–16 (Iowa Ct.App.1982), this court quoted with approval the following annotation from 29 L.Ed.2d 1067, 1075:

> If law enforcement officers anticipate before going to a particular place that they will find certain incriminating evidence there, and if there is no substantial danger that taking the time to obtain a valid warrant will result in the disappearance of the evidence, the officers must obtain a valid warrant authorizing the seizure of such evidence, 'exigent circumstances' justifying the failure to obtain a valid warrant in such a situation are lacking, and the mere fact that the evidence which the officers anticipated seizing at the particular place turns out to be in plain view when they arrive there cannot justify their seizure of the evidence without their first having obtained a valid warrant.

It is apparent to me that the agents were looking for the jacket when they searched the defendant's home. Similarly apparent

is the glaring inconsistency involved in concluding that when the State went into the defendant's home seeking a jacket, the State's discovery of that jacket was "inadvertent."

The State cites to *Oliver* in support of its argument that the plain view doctrine should be applied. In *Oliver*, our supreme court was faced with a situation, similar in this respect to the case at bar, where evidence seized during a search was not listed on the search warrant. In upholding the seizure under the plain view doctrine, the court stated that "[t]he record establishes that the magazines were omitted from the warrant application by oversight rather than intention, *and the officers were not looking for them.*" Accordingly, the court found the discovery of the evidence inadvertent within the meaning of the plain view doctrine. In the present case, the record satisfies me that the agents *expected* to seize the defendant's jacket and I would decline consequently to find its discovery inadvertent. As the plurality in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the opinion which enunciated the plain view doctrine in its current form, stated during its discussion of the element of inadvertence:

> If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of "Warrants ... particularly describing ... [the] things to be seized."

*Id.* at 471, 91 S.Ct. at 2040, 29 L.Ed.2d at 586.

The issue is not one of pretext, it is one of preventing an initially limited search from turning into a general one. A search warrant accomplishes this objective by requiring a particular description of the things to be seized. *Id.* at 467, 91 S.Ct. at 2038–39, 29 L.Ed.2d at 583. In the present case, that goal was not achieved. I would not sanction the means employed. I would hold that the seizure of the defendant's

jacket was not constitutionally justified and would reverse and remand for a new trial.

SCHLEGEL, J., joins this dissent.