STATE of Iowa, Appellee,

v.

**Rodney Lee JACKSON, Appellant.**

No. 84–1303.

Supreme Court of Iowa.

Jan. 15, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and Joseph P. Weeg, Asst. Atty. Gen., and James M. Metcalf, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Rodney Lee Jackson appeals from his conviction and sentence for first-degree murder in violation of Iowa Code sections 707.2(1) and 707.2(2) (1983). He contends the trial court erred in overruling his motion to suppress evidence of inculpatory statements he made during police interrogation in the absence of counsel. Because we find the State did not meet its burden in the suppression hearing to prove defendant waived his right to counsel before making the statements, we reverse and remand.

The appeal presents questions of waiver of defendant's fifth and fourteenth amendment rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as well as waiver of defendant's sixth and fourteenth amendment rights under such cases as *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). We find it necessary to address only the question of waiver of defendant's sixth and fourteenth amendment rights. In doing so, we are guided by the principles explained in *State v. Johnson,* 318 N.W.2d 417, 432–35 (Iowa), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). A two-step inquiry is involved. The first inquiry is whether the right to counsel had attached at the time of the statements, and the second is, if so, whether the defendant effectively waived that right. *Id.* at 432.

No dispute exists concerning the relevant facts. The controversy concerns the inferences to be drawn from them and what the result should be under the applicable law. Because our review is for error of constitutional magnitude, we evaluate the totality of the circumstances in the entire record and find the facts de novo. *State v. Hatter,* 342 N.W.2d 851, 854 (Iowa 1983).

Louis Reuter was killed in Waterloo in the early morning of September 3, 1983, as the result of being struck on the head with an eight-pound tree limb. His body was found near an alley in a residential area at approximately 3:00 a.m. Near the body were various personal items including a King Edward cigar box. The bloodstained tree limb was also found there.

Reuter's car was found some distance away at the home of Donnell Wright. Partially burned items including cigar boxes were found in a barrel behind Donnell's home. Other items belonging to the victim were found in the back yard. The battery and radiator were missing from the car. Wright told the police various stories about the car.

Eventually Wright told the officers that his brother Duane Eddy Wright and another man had driven to his home in the victim's car and told him "they had beat up an old white man and had robbed him of a few dollars." He said the two men rummaged through the car, keeping tools and cigars and burning other items. He said the three of them carried the tools and cigars into Donnell Wright's home. There the three men and Kathy Jackson had a drink. After a while, according to Donnell Wright, the stranger said he wanted to leave and suggested to Duane Wright that they get a bottle the old man had in his car and "go back to Al's." The two men then left. Donnell Wright identified defendant from a photo lineup as the man who had accompanied his brother.

John G. Daws, one of the police investigators, filed a complaint before a magistrate accusing defendant of first-degree murder. The complaint was accompanied by a lengthy affidavit setting forth all of the details of the investigation. The magistrate issued a warrant for defendant's arrest based on this complaint.

Defendant was arrested at 11:00 p.m. on September 5, 1983. After he was taken to the city jail, he was booked and read his *Miranda* rights. He was then placed in a cell. Officer Daws and the second investigating officer, Sergeant Gary E. Hartwig, conducted a search of defendant's residence after his arrest. Afterward, at approximately 1:00 a.m. the next morning, they went to defendant's cell and asked defendant if he would talk with them. Defendant said no and the officers left.

Later in the morning defendant was taken before a district associate judge for an initial appearance. The record of initial appearance shows that defendant was found to be entitled to have counsel appointed to represent him at public expense. The public defender's office was appointed. Preliminary hearing was scheduled for September 16, 1983, at 9:00 a.m. Bail was fixed at $500,000, and defendant was incarcerated in the county jail.

Subsequently, at approximately 10:00 a.m., officers Daws and Hartwig had de-fendant brought to an interrogation room at the jail and told him they wanted to know if he would talk with them. Defendant said he wanted to see his girlfriend Norma, but the officers told him they did not know when visiting hours were. Daws then read defendant his *Miranda* rights and asked if defendant understood them. Defendant said he did. The officer asked defendant to read and sign the form if he understood it. Defendant did so and agreed to talk to the officers.

The officers knew defendant had been through an initial appearance and Hartwig assumed an attorney had been appointed for him. Daws knew that attorneys were usually appointed for indigents at their initial appearance. The record does not show that defendant knew an attorney had been appointed for him, and the officers did not discuss that issue with him. Instead the officers used a standard *Miranda* waiver form containing a statement in which defendant acknowledged

> [t]hat I have the right to speak or confer with an attorney prior to and during interrogation by members of the Waterloo, Iowa Police Department, and that if I cannot afford to hire an attorney, one will be appointed by the court to represent me before any questioning, if I wish one.

Daws advised defendant he could stop the questioning any time he wished.

Defendant told the officers a version of relevant events in which Duane Wright was the principal actor in the homicide. Defendant acknowledged being present before, during and after the killing. He also admitted driving the victim's car away from the scene and helping burn the items taken from the car. After defendant made these statements the officers called in a court reporter and conducted an interrogation that was recorded and later transcribed. The interrogation was completed by noon.

A trial information was filed on September 14, 1983, charging defendant and Duane Eddy Wright jointly with first-degree murder. Defendant subsequently filed a motion to suppress his inculpatory

statements, alleging they were obtained in violation of the fifth, sixth and fourteenth amendments to the United States Constitution and in violation of the Iowa Constitution. A hearing was held on the motion. In addition to the testimony of the officers, the record includes a psychological evaluation of defendant made by James Harding, chief psychologist at the Black Hawk-Grundy Mental Health Center.

The psychologist's report indicated defendant had a full scale I.Q. of 73, reflecting mild mental retardation. His verbal I.Q. was 66, and his performance I.Q. was 84. The psychologist believed that defendant had a general understanding of the proceedings against him but that defendant's chances of misunderstanding increased with any departure from simple language. The report included the following:

> The patient [is] more than usually dependent on counsel for the preparation of a defense. It may be wise to ask the patient rather frequently to repeat in his own words what counsel has just said in order to ensure his understanding. It again is noted that at times he says yes or nods yes without understanding though he does at times seek clarification.

Defendant's motion to suppress was overruled by Judge Engelkes and the case was subsequently tried to Judge Van Metre. The challenged statements were admitted in evidence, and defendant was convicted. His motion for new trial was overruled, and he was sentenced to life imprisonment. This appeal followed.

■ I. *Attachment of the right to counsel.* This court recognized in *Johnson* that an individual's sixth and fourteenth amendment right to counsel attaches at the time that "adversary judicial criminal proceedings" are initiated against the person, "whether by way of formal charge, arraignment, preliminary hearing, information, or indictment." 318 N.W.2d at 432. The United States Supreme Court reiterated this standard in *United States v. Gouveia,* 467 U.S. 180, ——, 104 S.Ct. 2292, 2297–99, 81 L.Ed.2d 146, 153–56 (1984). The Court explained that the "core pur-

pose" of the counsel guarantee is to assure aid at trial when the accused is confronted by the advocacy of the government prosecutor. The right extends, however, to pretrial proceedings where " 'the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.' " *Id.* at ——, 104 S.Ct. at 2298, 81 L.Ed.2d at 154 (*quoting from United States v. Ash,* 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619, 627 (1973)). Moreover, state law prescribes the manner of commencing criminal proceedings. *See Johnson,* 318 N.W.2d at 432.

In Iowa a criminal proceeding is commenced "by the filing of a complaint before a magistrate." Iowa Code § 804.1 (1985). The actual prosecution of an indictable offense formally commences with the filing of a trial information or indictment. Iowa R.Crim.P. 4(2). In *Johnson* this court nevertheless held that the right to counsel attached upon the filing of a complaint by the county attorney followed by the issuance of a warrant and the arrest of defendant. The court noted that the significant level of prosecutorial involvement showed the arrest could not be characterized as "purely investigatory in nature." 318 N.W.2d at 435. In the present case the State contends defendant's right to counsel did not attach before he was interrogated because the record does not demonstrate participation by a prosecuting attorney in the proceedings.

The teaching of *Johnson* is that the filing of a complaint and procuring of a warrant will constitute a formal charge against the defendant for purposes of the sixth amendment when the circumstances show a State commitment at that time to prosecute the individual. The participation of a prosecuting attorney in the investigative stages of the proceeding is some evidence of such a commitment but is not determinative. In the present case, the complaint followed an extensive investigation by officers of the Waterloo police department. No doubt exists that the prosecutorial forces had focused their attention on defendant as a perpetrator of the offense for which the officers procured the arrest warrant.

This case is indistinguishable in principle from *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In that case no participation by a prosecuting attorney was shown. Based on investigative information, Des Moines police officers filed a complaint and obtained a warrant for Williams' arrest. Williams called a lawyer who instructed him to surrender to Davenport police. After Williams surrendered, he made an initial appearance before a judge in Davenport. The judge advised him of his *Miranda* rights and committed him to jail. He was then released to Des Moines officers to be returned to Des Moines. The Supreme Court said:

> There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail. The State does not contend otherwise.

*Id.* at 399, 97 S.Ct. at 1239–40, 51 L.Ed.2d at 436.

Similarly, in the present case a warrant had been obtained for defendant's arrest upon complaint by an investigating officer, defendant had been arrested, booked, read his *Miranda* rights and confined in jail. Subsequently he made an initial appearance before a judge, counsel was appointed for him, bond was set, and he was returned to jail. The only material difference in this case is the absence of evidence of participation in any relevant events by defense counsel, but that difference does not lessen the showing of the State's commitment to prosecute defendant.

We conclude that defendant's sixth and fourteenth amendment right to counsel had attached at the time he was interrogated by the Waterloo officers.

II. *Waiver of the right to counsel.* The sixth and fourteenth amendment right to counsel "is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton,* —— U.S. ——, ——, 106 S.Ct. 477, 88 L.Ed.2d ——, —— (U.S.1985). We have emphasized the care courts must exercise in determining whether the State has sustained its heavy burden to prove waiver of this right. *See Johnson,* 318 N.W.2d at 435. The State must prove by a preponderance of evidence that the defendant (1) understood the right and (2) intentionally relinquished it. *Id.* The right does not depend on a request by the defendant, and courts indulge every reasonable presumption against waiver. The same strict standard applies "whether at trial or at a critical stage of pretrial proceedings." *Williams,* 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 440. The strict waiver standard is explained in the trial context in *Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975) (defendant must be shown to have knowingly and intelligently relinquished the traditional benefits associated with the right to counsel). We apply that strict standard here.

We are unable to say the State met its heavy burden to prove waiver by defendant of his right to counsel in the present facts. No one fact is controlling, but taken together they compel this conclusion. The officers set out to obtain incriminating statements from defendant in the absence of counsel. When they were rebuffed in their first attempt to interrogate defendant, they attempted to interrogate him again. Unlike the situation in *Johnson,* they initiated the second contact. In the meantime, defendant had spent the night in jail, had an initial appearance and had counsel appointed for him. The record, also in contrast to the circumstances in *Johnson,* does not show defendant had talked with his attorney or was aware of any danger from interrogation in the absence of counsel. Rather the record shows the officers proceeded without regard to defendant's actual understanding of his right to counsel. Their advice, demonstrated in the waiver form employed by them, implied that defendant did not then have counsel. The officers told him an attorney

would be appointed for him before questioning if he wished, despite their knowledge that counsel must already have been appointed for him. Considering defendant's low intelligence and difficulty in comprehending language of even average clarity, it is impossible to believe he understood and made a knowing and intelligent decision to give up the right to counsel in submitting to the interrogation.

Indulging every reasonable presumption against waiver, as we must, we conclude that the State has not proved an effective waiver by defendant of his sixth and fourteenth amendment right to counsel before he made his incriminating statements. The trial court erred in overruling his suppression motion. Because the statement should not have been used against defendant, we reverse the judgment and remand the case for new trial.

REVERSED AND REMANDED.