STATE of Iowa, Appellee,

v.

Sherrie Lynn NELSEN, Appellant.

No. 84–1480.

Supreme Court of Iowa.

July 23, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., Denver D. Dillard, Co. Atty., and Mary Vavroch, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

We granted further review to examine a court of appeals decision holding defendant's sixth amendment right to counsel was violated by the State's trial use of her incriminating statements made to a probation officer. We agree with the court of appeals, reverse the district court judgment, and remand for new trial.

Early in 1984 defendant Sherrie Lynn Nelsen was convicted of operating a motor vehicle while intoxicated and while her license was under suspension. She received a suspended sentence and was placed on probation. After that she met monthly with her probation officer, Andrew McInroy.

April 24, 1984, McInroy and another probation officer allegedly observed defendant driving a car in Cedar Rapids while her license was still suspended. McInroy checked the registration on the vehicle defendant was driving and found it was registered to a Mr. Nelsen. He then wrote a letter to the Linn County attorney, providing him with this information.

May 7, 1984, the State, through the county attorney, filed a complaint against defendant in district court, charging her with driving while her license was suspended in violation of Iowa Code section 321B.38. The magistrate made a probable cause finding that defendant committed this public offense, and ordered issuance of a summons.

May 10, 1984, the clerk of court issued a summons ordering defendant to appear and "answer ... a complaint charging [her] with the serious misdemeanor of Driving While License Under Suspension." On the same day McInroy contacted defendant to schedule a meeting. Before this meeting defendant apparently had no knowledge of the complaint against her, or the outstanding summons.

This meeting resulted in a lengthy discussion. McInroy told defendant he had observed her driving and had informed the county attorney. Moreover, he told defendant a complaint would be filed, along with a report of the probation violation; he discussed possible dispositions of the new charge. In response, defendant made some incriminating statements.

June 5, 1984, defendant made her initial appearance before the court pursuant to the summons. A trial information was filed June 21, 1984, and defendant later was arraigned. She then filed a motion to suppress the statements made to her probation officer, alleging they were obtained in violation of her fifth and sixth amendment rights under the United States Constitution. Following an evidentiary hearing, trial court overruled defendant's motion.

The case proceeded to trial on September 4, 1984. Over objection, McInroy testified about the incriminating statements defendant made to him at their May 10 meeting, including her observation that "[m]aybe I shouldn't be so cute, people wouldn't recognize me."

After the jury found defendant guilty, trial court, on September 20, 1984, sentenced her to thirty days in jail with the opportunity for work release. Pursuant to agreement and stipulation of parties that defendant had been convicted of a new crime, trial court also revoked her probation and reinstated her suspended sentence of nine days. The court further provided,

however, that this time was to run concurrently with the thirty-day sentence.

Defendant appealed and we transferred the case to the court of appeals. That court reversed and remanded for new trial on the ground the State had violated defendant's sixth amendment right to counsel in obtaining and using her incriminating statements.

We granted the State's application for review to consider the sixth amendment issue.

 I. Because the appeal turns on a constitutional issue we review the record de novo and evaluate the totality of the circumstances. *State v. Jackson*, 380 N.W.2d 420, 421 (Iowa 1986). The sixth amendment states: *"In all criminal prosecutions,* the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI (emphasis added). This guarantee maintains the fair administration of our criminal justice system by assuring aid to the defendant when confronted by the government adversary. *Moran v. Burbine*, — U.S. ——, ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 427 (1986); *United States v. Gouveia*, 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 154–55 (1984); *Jackson*, 380 N.W.2d at 423. Consequently, the sixth amendment right to counsel also extends to pretrial proceedings because at those proceedings "'the accused [may be] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'" *Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298, 81 L.Ed.2d at 155 (quoting *United States v. Ash*, 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619, 627 (1973)).

 Our sixth amendment analysis follows federal precedent, *see id.*, and involves a two-step inquiry: (1) whether the right to counsel had attached when defendant made the incriminating statements, and (2) if so, whether defendant waived her

right before making the statements. *Jackson*, 380 N.W.2d at 421; *State v. Johnson*, 318 N.W.2d 417, 432 (Iowa), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

██ II. Because the right to counsel attaches upon the initiation of adversary criminal judicial proceedings, *Gouveia*, 467 U.S. at 187, 104 S.Ct. at 2297, 81 L.Ed.2d at 153, we first must determine whether such proceedings had been commenced under the facts presented here. Adversary proceedings are initiated by "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972) (plurality opinion). Defendant argues these proceedings were commenced when the county attorney filed a complaint and the magistrate ordered the clerk to issue a formal summons for defendant to appear and answer charges.

██ State law determines the manner in which the government commences criminal proceedings. *Jackson*, 380 N.W.2d at 423. In Iowa, a criminal proceeding is commenced "by the filing of a complaint before a magistrate." Iowa Code § 804.1 (1983);[1] *see Jackson*, 380 N.W.2d at 423; *Johnson*, 318 N.W.2d at 432. It is not determinative to our present inquiry that the prosecution of an indictable offense actually proceeds on the later filed information or indictment. *See Jackson*, 380 N.W.2d at 423; *Johnson*, 318 N.W.2d at 432; *see also United States ex rel. Sanders v. Rowe*, 460 F.Supp. 1128, 1139 (N.D.Ill.1978).

In *Johnson*, we held the defendant's sixth amendment right to counsel attached upon the county attorney's filing of a complaint and procuring of a warrant, followed by the arrest of defendant. 318 N.W.2d at 434–35. The court noted that a complaint is an "accusatory instrument." *Id.* at 434. Further, the level of prosecutorial involvement indicated that the "forces of the State had solidified

---

1. This language, standing alone, obviously does not trigger a defendant's sixth amendment right to counsel upon the mere filing of the complaint. A complaint filed by a "prosecuting wit-

ness," *see* Iowa R.Crim.P. 50, might not give any indication of the State's resolve to prosecute the named defendant.

in a position adverse to defendant." *Id.* at 435.

We followed the *Johnson* reasoning in *State v. Jackson.* There the investigating police officer filed a complaint against the defendant and obtained a warrant for his arrest. Defendant was arrested, and jailed after making an initial appearance, where the court appointed counsel. 380 N.W.2d at 424. Although the county attorney was not directly involved in *Jackson* as in *Johnson,* we found the State had made a commitment to prosecute the defendant. We held adversary proceedings had been commenced and defendant's right to counsel had attached. *Id.* at 423–24. In so holding, we noted:

> [T]he filing of a complaint and procuring of a warrant *will constitute* a formal charge against the defendant for purposes of the sixth amendment when the circumstances show *a State commitment at that time to prosecute the individual. The participation of a prosecuting attorney in the investigative stages of the proceeding is some evidence of such a commitment* but is not determinative.

*Jackson,* 380 N.W.2d at 423 (emphasis added).

■ In the case before us, the county attorney filed the complaint on the basis of McInroy's report. A magistrate made a probable cause determination, approved the prosecutor's complaint, and issued a summons ordering defendant to appear in court and to answer the charge. We agree with the court of appeals that absence of an arrest warrant is not fatal here. As that court noted, the issued summons served a similar purpose in requiring defendant to answer the complaint. In our de novo review we find a State commitment to prosecute defendant. Thus, we hold defendant's sixth amendment right to counsel had attached before her meeting with her probation officer that resulted in the incriminating statements.

■ III. After the sixth amendment right to counsel attaches, the State is precluded from attempting to "deliberately elicit" incriminating statements from the defendant, absent the presence of counsel or a valid waiver. *See Kuhlmann v. Wilson,* —— U.S. ——, ——, 106 S.Ct. 2616, 2628–31, 91 L.Ed.2d 367, 382–85 (1986); *United States v. Henry,* 447 U.S. 264, 272, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115, 123 (1980); *Brewer v. Williams,* 430 U.S. 387, 399–406, 97 S.Ct. 1232, 1240–43, 51 L.Ed.2d 424, 436–41 (1977); *Massiah v. United States,* 377 U.S. 201, 204–06, 84 S.Ct. 1199, 1201–03, 12 L.Ed.2d 246, 249–50 (1964); *see also Maine v. Moulton,* —— U.S. ——, ——, 106 S.Ct. 477, 487, 88 L.Ed.2d 481, 496 (1985) ("[T]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.").

■ Defendant's right to counsel is not dependent upon his or her request or assertion of the right. *Michigan v. Jackson,* —— U.S. ——, —— n. 6, 106 S.Ct. 1404, 1409 n.6, 89 L.Ed.2d 631, 640 n.6 (1986); *Jackson,* 380 N.W.2d at 424. Instead, the State has a heavy burden to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); *see Williams,* 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439. In order to demonstrate waiver, the State must show two things by a preponderance of the evidence: (1) the defendant understood his or her sixth amendment right to counsel, and (2) he or she intentionally relinquished it. *Jackson,* 380 N.W.2d at 424; *Johnson,* 318 N.W.2d at 435. Finally, we indulge in every reasonable presumption against waiver. *See Jackson,* 380 N.W.2d at 424.

The State argues it is not required to show waiver because it did not "deliberately elicit" defendant's incriminating statements. Rather, the State asserts, defendant volunteered these statements as part of an unstructured conversation. *See Moulton,* —— U.S. at ——, 106 S.Ct. at 487, 88 L.Ed.2d at 496 ("Thus, the Sixth Amend-

ment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached."). We are unpersuaded.

Defendant's probation officer, McInroy, testified he *called* her into his office to "confront" her about the driving incident. Her probation contract required her to meet with McInroy and be truthful with him. In this meeting McInroy confronted defendant with the following: he had observed her criminal conduct and contacted the county attorney, and a probation violation report and application to revoke probation would be filed. He identified and discussed possible dispositions of the new criminal complaint that would be filed by the county attorney. Finally, McInroy instructed defendant not to violate her probation again prior to the disposition of the current situation. McInroy testified the meeting and discussion were lengthy.

A probation officer "is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers." *Fare v. Michael C.*, 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197, 209 (1979); *see* Iowa Code §§ 801.4(7), 906.2. McInroy, in calling defendant into his office and confronting her over a lengthy period on behalf of the State, created a situation likely to elicit incriminating statements from defendant. That the discussion did not take place in strict question-and-answer format is not controlling. Although a discussion characterized as a "free-flow" conversation may be a consideration, *see Johnson*, 318 N.W.2d at 436, it is not determinative, *see Moulton*, —— U.S. at —— n. 14, 106 S.Ct. at 488 n. 14, 88 L.Ed.2d at 497 n. 14 ("The Sixth Amendment protects the right of the accused not to be confronted by an agent of the State regarding matters as to which the right of counsel has attached without counsel being present. This right was violated as soon as the State's agent engaged Moulton in *conversation* about the charges pending against him." (emphasis added)); *cf. Henry*, 447 U.S. at 273–74, 100 S.Ct. at 2188–89, 65 L.Ed.2d at 124–25. We find the meeting McInroy called with defendant

was a "knowing exploitation by the State of an opportunity to confront the accused without counsel being present." *Moulton*, —— U.S. at ——, 106 S.Ct. at 487, 88 L.Ed.2d at 496.

The State deliberately elicited incriminating statements from defendant after initiating adversary criminal judicial proceedings; moreover, it has failed to show defendant waived her right to counsel before making these statements. Her sixth amendment right was violated and admission of her incriminating statements, over objection, was error.

We affirm the well-reasoned opinion of the court of appeals, reverse the district court judgment, and remand for new trial.

DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.