STATE of Iowa, Plaintiff-Appellee,

v.

Monte JOHNSTON,
Defendant-Appellant.

No. 85–1352.

Court of Appeals of Iowa.

March 31, 1987.

James P. Piazza, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and Richard A. Williams, Asst. Co. Atty., for plaintiff-appellee.

Heard by SCHLEGEL, P.J., and HAYDEN, and SACKETT, JJ., but decided en banc.

SACKETT, Judge.

Defendant Monte L. Johnston appeals from his conviction, after a jury trial, of robbery in the first-degree in violation of Iowa Code §§ 711.1 and 711.2 (1985). Defendant contends the trial court erred in overruling his motion to suppress certain inculpatory statements he made while in police custody after his arrest. Defendant argues the statements were obtained in violation of his fifth, sixth and fourteenth amendment rights. We agree and reverse and remand for a new trial.

At approximately 2:35 a.m., March 6, 1985, Kelly Page robbed a Des Moines convenience store with a handgun. Page fled from the scene in a vehicle driven by defendant. A Des Moines police officer was parked across the street during the robbery. When the officer gave chase Page and defendant abandoned the vehicle and fled on foot. The police apprehended Page a short distance from the vehicle but were unable to locate defendant.

Defendant testified later that as he was running from the police a dog bit him on the hand. Defendant testified he hid for several hours. Later that morning, a cab driver picked up defendant and drove him to a southside residence. Later that same day police received information defendant could be located at the southside residence.

The county attorney's office filed a preliminary complaint before a magistrate accusing defendant of first-degree robbery. The magistrate issued a warrant for defendant's arrest based on this complaint and accompanying affidavits. Defendant was arrested and read his *Miranda* rights. There is conflicting evidence about whether defendant requested at that time to talk with his attorney. Officers then discovered defendant had been bitten and transported him to Broadlawns Medical Center for treatment.

While at the hospital, where he was guarded by two police officers outside his room, defendant was questioned about the dog bite by an animal control officer employed by the Des Moines Police Department. During the course of the questioning, the animal control officer asked defendant what he was doing at the time he was bitten. Defendant replied that he had been involved in a robbery and had been bitten while attempting to elude the police.

Defendant filed a motion to suppress these statements. After a hearing, the trial court overruled defendant's motion. At trial, the animal control officer testified as to these statements. Defendant testified he did not know Page intended to commit a robbery. The jury returned a verdict finding defendant guilty as charged. This appeal followed.

## I.

Because we are confronted with an alleged constitutional violation, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *State v. Conger,* 375 N.W.2d 278, 279 (Iowa App.1985); *State v. Losee,* 353 N.W.2d 876, 878 (Iowa App.1984). Our review is de novo. *State v. Hillesheim,* 291 N.W.2d 314, 316 (Iowa 1980). In determining whether the district court erred in overruling the motion to suppress we may consider not only evidence adduced in the motion to suppress but also later trial testimony. *State v. Donnell,* 239 N.W.2d 575, 578 (Iowa 1976).

## II.

This appeal presents questions of waiver of both defendant's fifth and sixth amendment rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). We find it necessary to address only the question of waiver of defendant's sixth amend-

ment right to counsel. *State v. Jackson,* 380 N.W.2d 420, 421 (Iowa 1986).

The Sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. Amend. VI, Iowa Const. Art. I. § 10. This guarantee maintains the fair administration of the criminal justice system by assuring aid to the defendant when confronted by the government adversary. *Moran v. Burbine,* 475 U.S. 412, ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 427 (1986); *State v. Nelsen,* 390 N.W.2d 589, 591 (Iowa 1986).

■ In resolving the issue of whether defendant's incriminating statements were obtained in violation of his constitutional rights, two questions must be answered:

(1) Whether the right to counsel had attached at the time the statements were made, and

(2) If so, whether the defendant had effectively waived that right.

*Jackson,* 380 N.W.2d at 421; *State v. Johnson,* 318 N.W.2d 417, 432 (Iowa), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

**A. Attachment of the right to counsel.** In *Johnson,* the Iowa Supreme Court held an individual's right to counsel attaches at the time that "adversary judicial criminal proceedings" are initiated against the person, "whether by way of formal charge, arraignment, preliminary hearing, information, or indictment." *Johnson,* 318 N.W.2d at 432.

In Iowa, the commencement of criminal proceedings by the government is statutorily defined. *Nelsen,* 390 N.W.2d at 591, *Jackson,* 380 N.W.2d at 423. Iowa Code § 804.1 (1985) provides a criminal proceeding is commenced "by the filing of a complaint before a magistrate." In *Johnson,* the court held defendant's sixth amendment right to counsel attached upon the county attorney's filing of a complaint and procuring of a warrant, followed by the arrest of the defendant. *Johnson,* 318 N.W.2d at 434–35. The supreme court followed the *Johnson* reasoning in *Jackson:*

[T]he filing of a complaint and procuring of a warrant will constitute a formal charge against the defendant for purposes of the sixth amendment when the circumstances *show a State commitment at that time to prosecute the individual.*

*Jackson,* 380 N.W.2d at 423 (emphasis added). *See Nelsen,* 390 N.W.2d at 591–92. In *Johnson,* the court found the county attorney's filing of a complaint requesting issuance of arrest warrant to be significant level of prosecutional involvement and was a sufficient showing the state had solidified in a position adverse to defendant. *Johnson,* 318 N.W.2d at 435.

■ In the instant case, we find there was a showing of the state's commitment to prosecute the defendant. *See Nelsen,* 390 N.W.2d at 592; *Johnson,* 318 N.W.2d at 434–35. The county attorney filed a preliminary complaint on the basis of a report filed by the officer who had arrested Page. A magistrate made a probable cause determination, approved the prosecutor's complaint and issued a warrant for defendant's arrest. *See Nelsen,* 390 N.W.2d at 592. Defendant had been arrested and read his *Miranda* rights. In our de novo review we find a state commitment to prosecute the defendant. We hold defendant's sixth amendment right to counsel had attached prior to his questioning by the animal control officer which resulted in the incriminating statements.

■ **B. Waiver of the Right to Counsel.** Once the defendant's right to counsel attaches "the state must sustain a heavy burden to prove" an intentional relinquishment or abandonment of a known right or privilege. *Nelsen,* 390 N.W.2d at 592 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). *See Jackson,* 380 N.W.2d at 424; *Johnson,* 318 N.W.2d at 435. In order to demonstrate waiver, the state must prove by a preponderance of the evidence:

1. The defendant understood his or her right to counsel, and

2. The defendant intentionally relinquished it.

*Brewer,* 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439, *Nelsen,* 390 N.W.2d at 592, *Jackson,* 380 N.W.2d at 424.

■■■ Defendant's right to counsel is not dependent upon his or her request or assertion of the right. *Michigan v. Jackson,* — U.S. —, — n. 6, 106 S.Ct. 1404, 1409 n. 6, 89 L.Ed.2d 631, 640 n. 6 (1986); *Nelsen,* 390 N.W.2d at 592. In addition, where the right to counsel has accrued, a valid waiver of counsel rights should not be inferred from the mere response by the defendant to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. *Jackson,* — U.S. at — n. 9, 106 S.Ct. at 1410 n. 9, 89 L.Ed.2d at 642 n. 9. Instead, the sixth amendment imposes an *affirmative obligation* on the state separate and distinct from the fifth amendment. *Maine. v. Moulton,* 474 U.S. 159, —, 106 S.Ct. 477, 487, 88 L.Ed.2d 481, 496 (1985); *United States v. Henry,* 447 U.S. 264, 274, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115, 125 (1980). Once the right to counsel has attached the state must refrain from creating a situation likely to induce the defendant to make incriminating statements without the assistance of counsel. *Moulton,* 474 U.S. at —, 106 S.Ct. at 487, 88 L.Ed.2d at 496; *Henry,* 447 U.S. at 274, 100 S.Ct. at 2189, 65 L.Ed.2d at 125. We indulge in every reasonable presumption against waiver. *Nelsen,* 390 N.W.2d at 592.

■■■ We are unable to say, based on our independent evaluation of the record, that the state met its heavy burden to prove waiver by the defendant of his right to counsel. No one fact is controlling, however, taken together they compel this conclusion. *See Jackson,* 380 N.W.2d at 424.

The animal control officer who questioned the defendant was employed by the Des Moines Police Department. The officer was wearing a uniform which had a police department identification patch on it. In addition, the officer held himself out in an authority role. When the officer first entered the hospital room he told to defendant he was an animal control officer with the police department and he was there to get information for a report *required* by the city. As such, we find the instant case analogous to *Nelsen,* where the defendant's probation contract required her to meet with and be truthful to her probation officer. *Nelsen,* 390 N.W.2d at 593. There the court determined the trial court should have suppressed defendant's incriminating statements obtained in violation of her right to counsel. *Id.*

The record in the instant case also shows defendant did not initiate conversation with the officer nor volunteer any information. Defendant's incriminating statements were in response to direct questioning by the officer. The state argues the officer's questioning of defendant did not amount to the kind of "interrogation" which *Miranda* seeks to prohibit. The state argues the animal control officer was only obtaining basic or "incidental identifying information" from defendant and not conducting "questioning designed to investigate crimes." *State v. Beatty,* 305 N.W.2d 496, 498–99 (Iowa 1981) (quoting *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109, 1112–13 (2nd Cir.1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976)). However, we determine the officer's questioning of defendant regarding what defendant was doing when he was bitten was more than mere identification information necessary or relevant in locating the animal in question. Moreover, the animal control officer admitted at both the suppression hearing and at trial that he did not follow the standard question format when questioning the defendant. The officer admitted he did not have with him the standard question format. In addition, the officer testified that although there is a specific form for dogbite reports he jumped around rather than following the form exactly.

The question which elicited the incriminating statements was not the first one the officer asked resulting in a free-flow conversation by defendant. *See Nelsen,* 390 N.W.2d at 593 ("That the discussion did not take place in a strict question-and-answer format is not controlling"). Rather, the defendant was responding to a series of questions which the officer had stated were

required by the city for the report. We find this questioning amounts to the level of interrogation which the guarantees of the sixth amendment are intended to protect. Thus, we find *Johnson* is distinguishable from the instant case. In *Johnson*, the court upheld the trial court's denial of a motion to suppress because defendant had initiated conversation and volunteered the incriminating information in a free-flow conversation as opposed to an interrogation format. *Johnson*, 318 N.W.2d at 436.

Finally, the animal control officer knew the defendant was under arrest. The officer testified when he arrived at the hospital to question the defendant he assumed the defendant was in custody because he saw two police officers standing guard outside defendant's room. In addition, the police officers themselves knew the animal control officer was going to question the defendant and a waiver of right of counsel had not yet been obtained. The record does not show defendant was given the opportunity to talk with his attorney or was aware of any danger resulting from interrogation in the absence of counsel. Rather, the record shows the police officers did not warn defendant about the implications of questioning by the animal control officer and allowed the officer to proceed without regard to defendant's actual understanding of his *Miranda* rights. *See Jackson*, 380 N.W.2d at 424.

At the same time the police officers and the animal control officer took no precautions to protect the privacy of defendant's meeting with the animal control officer. The door to defendant's hospital room was open when the animal control officer questioned him. Both police officers were standing just outside the room where defendant's responses to questions could likely be overheard.

Under this particular set of facts, we find the animal control officer was "allied ... with his fellow peace officers." *See Nelsen*, 390 N.W.2d at 593 (quoting *Fare v. Michael C.*, 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed. 197, 209 (1979)). Indulging every presumption against waiver, we determine the state has not met its burden of proving an effective waiver by defendant of his right to counsel before he made incriminating statements. The trial court erred in overruling his motion to suppress. Because the statements he made to the animal control officer should not have been used against the defendant, we reverse the judgment and remand for a new trial.

REVERSED AND REMANDED.

All Judges concur except DONIELSON, J., who dissents.

DONIELSON, Judge (dissenting).

I respectfully dissent. I do not believe the trial court erred in overruling the defendant's motion to suppress his inculpatory statements made at the hospital.

I first take issue with the rendition of the facts as adopted by the majority. The majority in the present case concluded that Officer Houghton was allied with his fellow police officers. I find no support for this conclusion. The record clearly reveals that Officer Houghton was not a sworn policeman. He had received no training in a police academy. He was not trained in the giving of *Miranda* warnings and at no time carried a card containing the *Miranda* warnings. Officer Houghton was authorized to issue citations only for purposes of animal control and nothing else. As an animal control officer, Officer Houghton was *not* involved in *any* police activities regarding the investigations of crimes. The vehicle which Officer Houghton is provided contains a one citizen band radio and has no capability to scan any police calls. Any calls regarding animal control are dispatched not from the Des Moines police station, but from the animal shelter at 1700 S.E. 30th in Des Moines.

The record in the present case clearly reveals that Officer Houghton was dispatched to Broadlawns General Hospital to investigate a dog bite case. There is no evidence in the record to show that Officer Houghton knew about defendant's arrest prior to the time he approached the defendant in his room when he saw two police officers standing outside the defendant's

room. There is no evidence that Officer Houghton was ever informed about the reasons why the police were outside the defendant's room or that the defendant was a suspect in a robbery.

The majority also makes much of the fact that Officer Houghton did not follow exactly in order a series of questions which are to be asked in a standard dog bite case. Officer Houghton, at the suppression hearing and again at trial, testified that there is no specific manner in which the animal control officer is required to ask questions. Rather, Officer Houghton testified that it is generally up to each individual animal control officer as to how to gather the information required to be obtained.

I also believe it is important to note that *nowhere* in Officer Houghton's report was there any mention of the defendant's statement that he had been involved in the robbery. Officer Houghton made no mention of defendant's statement to the police officers who were standing just outside defendant's door. Nor was Officer Houghton ever questioned by any police officer or detectives subsequent to the interview with the defendant. The first time Officer Houghton was ever questioned concerning the defendant's statement occurred when he was contacted by the assistant county attorney over one month after Officer Houghton had talked with the defendant concerning his dog bite.

The majority, in its attempt to forge Officer Houghton into an alliance with the police, cites for support the recent case of *State v. Nelsen,* 390 N.W.2d 589 (Iowa 1986). I find, however, that *Nelsen* is factually distinct from the present case. In *Nelsen,* the defendant's probation officer saw the defendant driving an automobile while her license was under suspension. 390 N.W.2d at 590. The probation officer then wrote a letter to the county attorney advising him of this fact. *Id.* The State subsequently filed a complaint against the defendant, and a magistrate issued a summons. *Id.* Several days later, the probation officer contacted the defendant for a scheduled meeting. *Id.* At the meeting, a lengthy discussion ensued in which the pro-

bation officer informed the defendant of his actions and that a complaint and summons would likely be issued. *Id.* In response, the defendant made some incriminating statements. *Id.*

The Iowa Supreme Court, in holding that the probation officer was allied with his fellow police officers and that defendant's statements should have been suppressed, emphasized the nature and role of a probation officer. 390 N.W.2d at 593. The court noted that the probation officer had *called* the defendant into his office and *confronted* her about the incident. *Id.* The court also noted that the probation officer had discussed possible dispositions of the complaint filed against the defendant. *Id.* The probation officer told the defendant not to violate her probation again. *Id.* The court additionally noted that because her probation contract required the defendant to tell the truth, such a situation created an atmosphere likely to elicit incriminating evidence. *Id.*

The facts in the present case are a far cry from those presented in *Nelsen.* Unlike the probation officer in *Nelsen,* Officer Houghton did not confront the defendant in order to inquire about an alleged offense. Officer Houghton went to the hospital with no knowledge whatsoever that the defendant may have been involved in a robbery. Moreover, there was no inherent nature of truthfulness that was required, such as in *Nelsen.* The defendant, who had been given his *Miranda* rights, was under no obligation to tell Officer Houghton anything other than those incidents relating to the dog bite. Furthermore, once defendant stated his involvement in the robbery, Officer Houghton refrained from questioning the defendant further about the incident, unlike *Nelsen,* and unlike *Maine v. Moulton,* 474 U.S. 159, ——, 106 S.Ct. 477, 488, 88 L.Ed. 481, 497 (1985), wherein the United States Supreme Court noted that the defendant's sixth amendment rights were violated as soon as the State's agent engaged the defendant in *conversation* about the pending charges. No such claim is made in the present case. I therefore find it difficult to accept the majority's argument that Officer Houghton was allied

with the police in seeking to elicit incriminating statements from the defendant.

I also disagree with the majority's analysis concerning when the defendant's right to counsel has been attached and invoked. In *Moulton*, 474 U.S. at ——, 106 S.Ct. at 484, 88 L.Ed.2d at 492, the United States Supreme Court, in discussing the sixth amendment context of the right to counsel, stated that "once the right to counsel has attached *and been asserted*, the State must of course honor it." I therefore read *Moulton* as requiring that attaching *and* asserting the right to counsel is a prerequisite to a claim of a violation of a defendant's sixth amendment right.

I additionally find the United States Supreme Court holding in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), to be highly persuasive. In *Murphy*, the Court noted that if the defendant wishes to be afforded the protection of the fifth amendment, he must claim it or he or she will not be considered to have been "compelled" within the meaning of the amendment. 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409, 419. The *Murphy* court noted that the United States has never adopted a view that a person must put the government on notice by formally availing himself of the privilege only when he alone is aware of the incriminating nature of the questions asked. *Id.* at 428, 104 S.Ct. at 1143, 79 L.Ed.2d at 419. The Court additionally noted that the incriminating nature of a question, by itself, does not excuse a failure to assert the privilege. *Id.* at 428, 104 S.Ct. at 1143, 79 L.Ed.2d at 420. The *Murphy* court ultimately opined that a person who is "confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Id.* at 429, 104 S.Ct. at 1143, 79 L.Ed.2d at 420. If the person asserts the privilege, "he may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him...." *Id.* If, however, that person chooses to answer,

his or her choice will be considered free and voluntary since he or she was free to claim the privilege and would suffer no penalty as a result. *Id.*

Applying the principles enunciated in *Murphy*, I first note that at no time did the defendant assert his right to counsel. Though the Court's holding in *Michigan v. Jackson*, —— U.S. ——, ——, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631, 640 (1986), appears to suggest that a defendant's right to counsel is not dependent upon his or her request, that Court's holding appears to be limited to those situations where the police initiate interrogations after a defendant's *assertion*, at an arraignment or similar proceeding, of his right to counsel. —— U.S. at ——, 106 S.Ct. at 1410, 89 L.Ed.2d at 642. I do not read *Jackson* as holding that all police-initiated interrogations are prohibited the moment a defendant's sixth amendment right to counsel attaches, with or without a request for counsel. To hold otherwise, would completely negate the extensive discussion of waiver in prior sixth amendment cases and render the "knowing and voluntary waiver" requirement meaningless.

Additionally, the facts in the present case do not lead to a finding of custodial interrogation as discussed in *Moulton* and *Jackson*. In the present case, the defendant was not being interrogated as to the facts of the alleged robbery, but was being questioned about a dog bite. Officer Houghton did not question the defendant with the intent of eliciting incriminating evidence. Officer Houghton had absolutely no knowledge of why the two policemen were outside the defendant's door, nor did he have any knowledge that defendant was a suspect. Moreover, the routine questions asked by Officer Houghton about the dog bite most assuredly could not have been perceived by him as likely to elicit incriminating evidence.

I would therefore hold that the defendant failed to assert his right to counsel and that the statement made to Officer Houghton should not be suppressed. I would further find that Officer Houghton was in

no way allied with the police for the purposes as set forth by the majority.