**STATE of Iowa, Plaintiff–Appellee,**

v.

**Robert Anthony RUAN, Defendant–Appellant.**

No. 86–958.

Court of Appeals of Iowa.

Dec. 17, 1987.

Charles Harrington, Chief Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Mark Zbieroski, Asst. Atty. Gen. and Mark R. Cozine, Cherokee Co. Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

OXBERGER, Chief Judge.

The defendant Robert Ruan appeals his conviction of first-degree theft in violation of Iowa Code sections 714.1 and 714.2. He contends the trial court erred in: (1) refusing to suppress a letter, and the fruits thereof, that his jailor opened and read without his permission while he was in pretrial detention; (2) refusing to suppress incriminating statements deliberately elicited by the jailor in violation of his right to counsel; (3) allowing the State to utilize his former conviction of conspiracy to commit third-degree theft for impeachment purposes; and (4) considering his refusal to admit guilt in making the sentencing decision. We affirm.

Ruan was arrested for the theft of several rings and was subsequently charged with first-degree theft. While in pretrial detention, Deputy Sheriff Lindstrom received a letter addressed to Ruan from Ruan's sister. The following message was written on the back of the envelope: "For Bob Ruan only not for *you* coppers to read, so forget it! (Ha Ha)." Lindstrom could not detect any contraband by feeling the

envelope, so he opened the letter to check for "written contraband." The letter contained a reference to a diamond ring in the writer's possession which, according to the letter, was stolen by the defendant. A copy was made of the letter and the original given to the defendant.

When Lindstrom delivered the letter, he informed Ruan it had been opened and copied. According to Lindstrom, Ruan asked if the letter contained "bad news or is it going to be damaging to him." According to Ruan, Lindstrom stated that "it didn't look too good, and it could convict me." Lindstrom admitted saying "it didn't look too good," but denied making the rest of the statement. When this conversation ended, Ruan "stormed" back to his cell.

Lindstrom's next contact with Ruan occurred when Lindstrom took lunch to all the prisoners in the main cell area. According to Lindstrom, Ruan approached him and said:

> He wasn't pissed off at me anymore. He said that I was just doing my job, and he just hoped that Mary didn't get into any trouble because he's the one that had stolen the ring and didn't want her to get in any trouble for possession of it.

Ruan denied admitting that he had stolen the ring. Based on the letter and Ruan's statements, the police obtained a search warrant, searched Mary Ruan's residence, and seized the stolen ring.

### I.

The defendant argues in his first assignment of error that this letter, the ring, and the confession should have been suppressed since the evidence was obtained in violation of his rights under the fourth amendment, and Article I, section 8 of the Iowa Constitution. In considering the defendant's constitutional claim, we make an independent evaluation of the totality of the circumstances. *State v. Jackson*, 380 N.W.2d 420, 421 (Iowa 1986). The Iowa Supreme Court has noted the search and seizure provisions of the United States and Iowa Constitutions contain identical language. *State v. Bishop*, 387 N.W.2d 554, 557 (Iowa 1986); *State v. Groff*, 323 N.W.

2d 204, 207 (Iowa 1982). They generally are "deemed to be identical in scope, import, and purpose." *Id.*

■ The Supreme Court has held that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539–40, 53 L.Ed.2d 629, 641 (1977); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 459 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, 950 (1974). Pretrial detainees who have been not convicted of any crimes retain at least those constitutional rights that are enjoyed by convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447, 472 (1979). These constitutional rights, however, are subject to restrictions and limitations. *Id.*, at 545, 99 S.Ct. at 1877, 60 L.Ed.2d at 473. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 545–46, 99 S.Ct. at 1877, 60 L.Ed.2d at 473. "There must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Id.* at 546, 99 S.Ct. at 1878, 60 L.Ed.2d at 473 (quoting *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed. at 935). "This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* The Court has also stated the presumption of innocence has no application to a determination of the rights of a pretrial detainee. *Bell*, 441 U.S. at 533, 99 S.Ct. at 1870, 60 L.Ed.2d at 465.

■ Institutional security and the preservation of internal order and discipline are essential goals that may require the limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. *Bell*, 441 U.S. at 546, 99 S.Ct. at 1878, 60 L.Ed.2d at 473. There is no difference between convicted

prisoners and pretrial detainees when reviewing security practices. *Id.* at 546 n. 28, 99 S.Ct. at 1878 n. 28, 60 L.Ed.2d at 493 n. 28. ("There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates"). " '[C]entral to all other corrections goals is the institutional security within the corrections facilities themselves.' " *Id.* at 546–47, 99 S.Ct. at 1878, 60 L.Ed.2d at 473 (*Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 502 (1974)). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547, 99 S.Ct. at 1878, 60 L.Ed.2d at 473.

The applicability of the fourth amendment depends upon whether "the person invoking its protection can claim a 'justifiable'; a 'reasonable'; or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979). We must decide whether a pretrial detainee's expectation of privacy in his nonprivileged mail is the kind of expectation of privacy that "society is prepared to recognize as 'reasonable.' " *Katz v. United States,* 389 U.S. 347, 360–61, 88 S.Ct. 587, 516, 19 L.Ed.2d 576, 587 (1967) (Harlan, J., concurring.) Determining whether an expectation of privacy is "legitimate" or "reasonable" entails a balancing of interests. The two interests here are the interest of society in the security of its penal institutions and the interest of the pretrial detainee's privacy interest in not having his nonprivileged mail examined. *See Hudson v. Palmer,* 468 U.S. 517, 527–28, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393, 403–04 (1984).

■ We conclude the balance must be struck in favor of institutional security. Prison officials must constantly be alert to stop the flow of illegal drugs and weapons into prisons. They must also be vigilant to detect escape plots before they can be carried out. Additionally, a pretrial detainee's rights are already limited by the exigencies of prison. A right to privacy in traditional fourth amendment terms is fundamentally incompatible with the security measures necessary to ensure institutional security and internal order. *Cf. Hudson v. Palmer,* 468 U.S. at 527–28, 104 S.Ct. at 3201, 82 L.Ed.2d at 404 (prisoners have no expectation of privacy in their prison cells).

We also conclude that society accepts that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Bell,* 441 U.S. at 537, 99 S.Ct. at 1873, 60 L.Ed.2d at 467. We therefore hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a pretrial detainee might have in his nonprivileged mail, and accordingly, the fourth amendment proscription against unreasonable searches and seizures does not apply. The trial court did not err in denying defendant's suppression motion.

II.

The defendant's second assignment of error is that the trial court erred in overruling his motion to suppress a statement obtained by the police in violation of his sixth amendment right to counsel. Ruan argues Lindstrom deliberately elicited his statement that he had stolen the ring. The State responds by arguing that Ruan initiated both conversations and, therefore, the statements were voluntary.

Once a defendant's sixth amendment right to counsel attaches, the State is precluded from attempting to "deliberately elicit" incriminating statements from the defendant, absent the presence of counsel or a valid waiver. *State v. Nelsen,* 390 N.W.2d 589, 592 (Iowa 1986). However, "the sixth amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from an accused after the right to counsel has attached." *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364, 384 (1986); *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481, 496 (1985). The defendant must demonstrate that the State took some action, beyond mere listening, that was designed deliberately to elicit incriminating remarks. *Kuhlman,* 477 U.S. at 459, 106 S.Ct. at 2630, 91 L.Ed.2d at 385.

We conclude the defendant initiated both conversations which ultimately led to his making the incriminating statements. Lindstrom, pursuant to his duty, delivered the letter to Ruan and informed him it had been opened and copied. He made no statements that would indicate he was "confronting" Ruan with incriminating evidence. Lindstrom then responded to *Ruan's* question about what the letter contained. This is also true of the later conversation. *Ruan* approached Lindstrom and made statements apologizing for and explaining his anger. Lindstrom did not initiate this conversation. There is also evidence in the record to establish that Lindstrom attempted to prevent Ruan from saying more. We therefore hold that Ruan's sixth amendment right to counsel was not violated.

### III.

The defendant's third assignment of error is that the trial court erred in allowing the State to impeach the defendant with evidence that he had been convicted of conspiracy to commit theft in the third-degree. He argues that a conspiracy conviction does not require proof of a dishonest act because the conspiracy is a "thought crime," and the "overt act" could be committed by a co-conspirator, and may not involve dishonest conduct.

Iowa Rule of Evidence 609(a) allows the use of a prior conviction for impeachment purposes if the crime involves dishonesty or false statement and the probative value outweighs its prejudicial effect. *State v. Roth,* 403 N.W.2d 762, 767 (Iowa 1987). Theft is an impeachable offense under this rule. *State v. Willard,* 351 N.W.2d 516, 518 (Iowa 1984).

Conspiracy is defined as "an agreement or combination between two or more persons to engage in a course of conduct which will consist, in whole or part, of criminal acts by one or more of the conspirators." Iowa Code § 706.1 (1985). The supreme court has held that "[t]he requisite intent [to secure a conspiracy conviction] is 'at least the degree of criminal intent necessary for the substantive of-

fense itself.'" *State v. Boyer,* 342 N.W.2d 497, 499 (Iowa 1984). It logically follows, therefore, that if the substantive offense underlying a conspiracy conviction is an impeachable offense, then the conspiracy conviction should be usable for impeachment purposes.

In the present case the defendant had a prior conviction for conspiracy to commit theft. A theft conviction requires proof of the intent to deprive another of property, misappropriate, deceive, or commit fraud. Iowa Code § 714.1 (1985). Since the defendant could not have been convicted for conspiracy to commit theft unless he had the intent required to commit theft, his conspiracy conviction is relevant to show dishonesty.

This relevance is highlighted since the defendant asserted an entrapment defense and his credibility would be the determinative factor. The prior conviction goes directly to the defendant's credibility and the truth and veracity of his testimony. The jury is entitled to have all the relevant evidence relating to the defendant's honesty, and we hold the trial court did not err in allowing the cross-examination.

### IV.

The defendant's final assignment of error is that the trial court improperly considered the defendant's refusal to admit guilt as a sentencing factor. We disagree.

We agree that it is impermissible for a sentencing court to base its decision on a defendant's refusal to admit guilt. *See State v. Nichols,* 247 N.W.2d 249, 255 (Iowa 1976). However, the court in this case gave an extensive explanation of why he imposed the particular sentence. He was concerned with the defendant's extensive juvenile history and his total lack of respect for the legal system. While his phraseology may have been unfortunate, we do not find he considered any impermissible factors.

AFFIRMED.